**Oscar PAZ, Petitioner,**

v.

**PENNSYLVANIA HOUSING FINANCE AGENCY, Homeowners Emergency Mortgage Assistance Loan Program, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 21, 1998.
Decided Jan. 5, 1999.

---

Irwin Trauss, Philadelphia, for petitioner.

John F. Goryl, Harrisburg, for respondent.

Before FLAHERTY, J., LEADBETTER, J., and NARICK, Senior Judge.

FLAHERTY, Judge.

Oscar Paz (Paz) petitions for review from an adjudication of the Pennsylvania Housing Finance Agency (PHFA) which denied him mortgage assistance. We affirm.

The facts are essentially undisputed. In 1984, Paz purchased his home via a mortgage held by First Nationwide Mortgage Corporation. The mortgage originated as insured by the Federal Housing Authority (FHA) under Title II of the National Housing Act, 12 U.S.C. §§ 1707 – 1715z–18. The FHA falls within the authority of the Department of Housing and Urban Development (HUD). At the time of Paz's obtaining the mortgage, HUD administered a program called the Mortgage Assignment Program (MAP). MAP was designed to provide a homeowner, who defaulted on his FHA insured mortgage because of circumstances beyond his control, with a program that would enable him to prevent the loss of his home.

Under MAP, HUD would accept assignment of the mortgage from the mortgage holder and would enter into a forbearance agreement with the homeowner which could permit him to go as long as three years making reduced or no mortgage payments, before he had to resume regular mortgage payments. HUD terminated MAP effective April 26, 1996. HUD replaced the MAP program with a program of Loss Mitigation Procedures under which HUD may recompense lenders/mortgagees for using mortgage foreclosure alternatives, such as special forbearance, loan modifications, deeds in lieu of foreclosure, payment of partial claims, and mortgage modifications. There are financial incentives offered to lenders/mortgagees to use the Loss Mitigation Procedures. However, application of these Loss Mitigation Procedures is discretionary with the lenders/mortgagees.

In 1983, the Pennsylvania General Assembly passed the popularly called Homeowner's Emergency Mortgage Assistance Act, Act of December 23, 1983, P.L. 385, *as amended*, 35 P.S. §§1680.401c – 1680.410c (the State Act). The State Act provided for a Homeowner's Emergency Assistance Program (HEMAP) which resembled the federal MAP administered by HUD. As Paz observes, HEMAP

> used the same eligibility criteria as the HUD program and contained similar criteria for determining when a person would be required to resume monthly payments. Like the HUD program, the HEMAP program allowed a homeowner to go as long as three years without resuming full mortgage payments and, depending on the homeowner['] income, permitted the payments to be as little as $0 during that period of time.

Paz's brief at pp. 5–6.

The State Act excluded from its coverage those who were eligible for federal assistance via MAP by virtue of their mortgage being insured by the FHA under Title II of the National Housing Act. The State Act provides in relevant part that

> (a) .... The provisions of this article shall not be applicable if:
>
> ....
>
> (3) The mortgage is insured by the Federal Housing Administration under Title II of the National Housing Act (12 U.S.C. §§ 1707–1715z–18).

35 P.S. §1680.401c(a)(3). Likewise, in defining its eligibility for assistance criteria, the State Act provides that

> (a) No assistance may be made with respect to a mortgage under this article unless all of the following are established:
>
> ....
>
> (3) the mortgage is not insured by the Federal Housing Administration under Title II of the National Housing Act (12 U.S.C. §§ 1707–1715z–18).

35 P.S. §1680.404c(a)(3). Thus, if a mortgage was insured by FHA under Title II, the mortgagor is not eligible for state assistance.

Paz became too ill to work and began missing mortgage payments. At that time, Paz could not apply for the federal MAP program as HUD had already terminated MAP. Paz notes that he was unable to get any assistance from the mortgagee under the discretionary criteria of the Loss Mitigation Procedures that replaced MAP. Paz's brief at p. 7. Thus, Paz applied for state assistance under HEMAP. Paz's application to HEMAP was denied on the basis that Paz's mortgage was insured by the FHA under Title II of the National Housing Act. Paz utilized the appeals procedure within the PHFA which provided him no relief. From the PHFA's adverse decision, Paz petitions this court for review.

■■■■ Appellate review over the PHFA's adjudication is limited to determining whether constitutional rights were violated, an error of law was committed or whether the necessary findings of fact are not supported by substantial evidence. *Mull v. Pennsylvania Housing Finance Agency*, 108 Pa. Cmwlth. 459, 529 A.2d 1185 (Pa.Cmwlth. 1987). Paz raises only one issue for our review:

> Whether the Pennsylvania Housing Finance Agency (PHFA) acted in violation of the equal protection clause of Article I, section 26 of the Pennsylvania Constitution and in violation of [the equal protection clause of] section 1 of the 14[th] Amendment to the United States Constitution when it denied Mr. Paz's application for assistance under the Homeowner[']s Emergency Assistance Program[?]

Paz's brief at p. 3. As an initial matter we note that the "equal protection provisions of the Pennsylvania Constitution are analyzed by this Court under the same standards used by the United Stated Supreme Court when reviewing equal protections claims under the Fourteenth Amendment to the United States Constitution." *Love v. Borough of Stroudsburg*, 528 Pa. 320, 328, 597 A.2d 1137, 1139 (1991). Thus, as the State constitution provides no broader protections than the federal constitution in the area of equal protection

analysis, it is unnecessary to provide a separate analysis under each constitution.

■■■■ For clarity's sake, the statutory classifications at issue herein are 1) those whose mortgages are insured by the FHA under Title II of the National Housing Act and 2) those whose mortgages are not so insured. The level or intensity of judicial scrutiny of a classification depends upon the nature of the classification created. *Love*. There are three levels of scrutiny: 1) strict, 2) intermediate and, 3) rational basis. *Id*. Neither of the parties argues that strict or intermediate scrutiny is applicable. Both parties seem to agree that the rational basis test applies herein. *See, e.g.*, Paz's brief at p. 9 ("when legislation is applied in a manner that discriminates between citizens on some basis other than a suspect classification, there must be some 'rational basis', related to the purpose of the law, for that discrimination."); PHFA's brief at p. 10 ("There is a reasonable basis for the legislature to continue the exclusion of such loans from coverage of the HEMAP program."). Accordingly, we will apply the rational basis level of scrutiny to the statutory classification.

Paz's claim is that at the time of the State legislature's passing of HEMAP, there was a rational purpose in excluding mortgagors whose mortgages were insured by the FHA under Title II of the federal National Housing Act. According to Paz "when the FHA MAP program was in place, there was a rational basis, consistent with th[e] statutory purpose of the Homeowner's Emergency Mortgage Assistance Act [which was to enable homeowners to avoid the loss of their homes due to foreclosure] for excluding FHA insured mortgages from the program because there was a program 'almost identical' to HEMAP available to FHA insured Mortgagors which accomplished the same purpose." Paz's brief at pp. 15–16. However, according to Paz because the federal MAP program is no longer available, the State Act's exclusion of federally protected borrower/mortgagors from its HEMAP assistance programs now violates the federal and state constitutions' equal protection guarantees. Paz argues that after

HUD terminated the FHA Mortgage Assignment Program, the basis for discriminating against Mr. Paz simply because he had a FHA insured mortgage evaporated. After the elimination of the Mortgage Assignment Program there was no meaningful difference between Mr. Paz and all other applicants for HEMAP, no difference that could be rationally related to the purpose of the law.

Paz's brief at p. 11. Thus, Paz claims that the classifications set up by the state act fails the rational basis test.

The rational basis test involves a two-prong inquiry: 1) whether there exists any legitimate state interest and 2) whether the statute is reasonably related to promoting a legitimate state interest. *Strong v. County of Erie*, 122 Pa.Cmwlth. 461, 552 A.2d 350 (Pa.Cmwlth.1989). This is fundamentally a "means-end" inquiry into whether the statute has some legitimate state goal or end and whether the statute can in any way be said to further the goal. Legislation enacted by the General Assembly bears a presumption of constitutionality and under a rational basis challenge, the party asserting the unconstitutionality of a statute bears a heavy burden to prove that the statute violates the constitution. *Plowman v. Department of Transportation, Bureau of Driver Licensing*, 535 Pa. 314, 635 A.2d 124 (1993). Under the rational basis test, a classification is not violative of equal protection if **any state of facts can be conceived** to sustain the classification. *Federal Communications Commission v. Beach Communications*, 508 U.S. 307, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993); *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). In undertaking its analysis, the reviewing court is free to hypothesize reasons which the legislature could have had for the classification, *i.e.*, the courts are free to hypothesize a legitimate state goal which the classification serves. *Federal Communications Commission; United States v. Maryland Savings Share Corp.*, 400 U.S. 4, 91 S.Ct. 16, 27 L.Ed.2d 4 (1970); *Martin v. Unemployment Compensation Board of Review*, 502 Pa. 282, 466 A.2d 107 (1983), *cert denied*, 466 U.S. 952, 104 S.Ct. 2156, 80 L.Ed.2d 541 (1984). (*Martin v. U.C.B.R.*). Nor do courts require that the legislature actually consider the particular rationale or goal which the courts hypothesized. *Martin v. U.C.B.R.* Neither do the courts require that the legislature provide evidence of record to justify the classification. *Martin v. U.C.B.R.* Indeed "social and economic legislation is valid unless the 'varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [a court] can only conclude that the legislature's actions were irrational.' This is a heavy burden...." *Hodel v. Indiana*, 452 U.S. 314, 332, 101 S.Ct. 2376, 69 L.Ed.2d 40 (1981), *quoting, Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979). Given the foregoing and the presumption of a statute's constitutionality, the person challenging a statute under the rational basis test has the burden to show that under **no state of facts** can the classification further **any conceivable** legitimate state goal. *Federal Communications Commission*, 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211 (those attacking a statute under rational basis have the burden to "negative every conceivable basis which might support it.").

Given this burden, we must conclude that Paz has simply failed to carry it. Paz has not shown that under no state of facts does the classification fail to further any legitimate state goal.

Indeed, PHFA offers a rational basis for the classification. PHFA argues that

> the Pennsylvania Legislature may have adopted HUD's view as espoused in connection with its published Loss Mitigation Procedure Regulations, 24 CFR Part 203 (61 FR 35014) (62 FR 60123) that the Loss Mitigation tools represent a "... spectrum of foreclosure-avoidance techniques, not all of which can be applied to particular buyers, but which as a whole represent substantial opportunities for FHA borrowers to maintain homeownership." (61 FR 60129). In such case, the Legislature may logically and in good faith believe that there is no need to extend benefits of the HEMAP statute to this additional class of mortgagors (with the concomitant drain on the HEMAP fund).

PHFA's brief at pp. 17–18. In other words, the legislature could have rationally concluded that because the FHA program provides some protection to its insured mortgagors, the state need not provide those same mortgagors with protection and that scarce state revenues may be more efficiently spent on those who do not have such FHA protections. We agree. Just because the FHA program no longer provides as much protection as the state HEMAP program does not render HE-MAP's exclusion of FHA insured mortgagors from its program a violation of equal protection. As the classification has the legitimate state goal of conserving funds to provide mortgage assistance for those not otherwise covered by FHA protections and such goal is rationally furthered by the classification, the statute passes constitutional muster. As such, the order of the PHFA is affirmed.

### ORDER

NOW, January 5, 1999, the order of the Pennsylvania Housing Finance Agency, dated January 28, 1998, which denied Oscar Paz mortgage assistance, is hereby affirmed.