**Ramata DIWARA, Keita Komba, Ibrahima Diasse and Cheikh Kebe, Petitioners**

v.

**STATE BOARD OF COSMETOLOGY, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 7, 2004.

Decided July 1, 2004.

*v. Maleski,* 167 Pa.Cmwlth. 458, 648 A.2d 595 (1994).

Frank Finch, III, Philadelphia, for petitioners.

Deborah B. Eskin, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, LEADBETTER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY SENIOR Judge McCLOSKEY.

Ramata Diwara, Keita Komba, Ibrahima Diasse and Cheikh Kebe (collectively Petitioners) have filed a consolidated petition for review of an order of the Pennsylvania Department of State, Bureau of Professional and Occupational Affairs and State Board of Cosmetology (Board), affirming individual orders by a hearing examiner that Petitioners had violated Section 2 of the Beauty Culture Law (Law),[1] 63 P.S. § 508, by operating a cosmetology shop without a license. We affirm.

The hearings were all heard and decided by the same hearing examiner. A separate hearing was held for each Petitioner.

At the hearing for Ramata Diawara, Thomas Knotts, a regulatory inspector, testified that he inspected Ms. Diawara's shop and found that she was operating it without a license. The name of the shop was "The Queens of African Hair Braiding Salon" and it was located in Philadelphia, Pennsylvania.[2] (R.R. at 70a). He stated that when he entered the shop, a young woman was braiding a gentleman's hair. He asked to speak to the owner and Ms. Ramata was reached by phone. Ms. Ramata later arrived at the shop. Mr. Knotts stated that he observed combs, lighters, a hair dryer, hair spray and hair cream in the shop. There were also appointment sheets with prices and instructions for perming hair. He found a piece of paper on top of the desk from an appointment book that had the word perm underlined and stated "perm hair, get glue which is underlined for weave. Part hair

---

1. Act of May 3, 1933, P.L. 242, *as amended.*

2. Petitioners' shops were all located in Philadelphia, Pennsylvania.

and put glue on the weave and stick it on hair—hair glue perm in parentheses." (R.R. at 30a). He stated that advertisement "flyers" stating "nice, clean and professional" and containing five-dollar-off coupons for a braid style were in the shop. (R.R. at 29a). He noted that the outside of the shop showed pictures of hair styles and hair braids and a sign that stated "African Hair Braiding, all styles, and open with the phone number and walk-in's welcome." (R.R. at 28a).

Amadoo Balde, president of the African Braiders Association of Philadelphia, testified next.[3] He stated that he contacted cosmetology schools in the Philadelphia area to find out if the schools offered courses in hair braiding. He claimed the schools did not offer any courses in hair braiding.

Mr. Balde claimed that the requirements of a cosmetology license do not reflect what a hair braider does. He claimed that braiders just add synthetic or human hair to the hair on the customer's head. Mr. Balde stated that in many cases the hair does not even need to be washed because the customer washes it before coming to the shop. He claimed that while the hair braids sometimes need to be cut, the customer's natural hair is not cut. He agreed that gel, mousse and hair spray are used. Also, the ends of the synthetic hair are sometimes burned if it is too long.

Mr. Balde stated that hair braiding is a natural art that was learned through families in Africa. He explained that it is learned through braiding the hair of family and friends and some people learn it well enough to open and maintain businesses. Mr. Balde stated that since opening his own business in 1994, he has only had three or four Caucasian customers. He explained that due to the different texture of African hair, an African–American can keep a hair braid for a month or two, but Caucasian braids only last two weeks.

Ms. Diawara testified briefly. She claimed that the calendar book and papers found inside the shop were not hers.

Joseph Flannery, a regulatory officer for the Department of State, testified at the hearing regarding Keita Komba. He stated that he inspected the "Bole Hair Braiding Shop." (R.R. at 117a). He observed an adjustable chair, wet sterilizer, reception desk, shampoo tray basin, towel area, combs and brushes. He noted that a sign outside the shop showed pictures of hair braiding styles and an "open" sign. (R.R. at 79a). He stated that he cited Ms. Komba for maintaining an unlicensed shop.

Ms. Komba testified briefly. She was asked whether a barber was present at her shop. She stated that a barber was present, but he was just a friend. She claimed that he did not cut hair at her shop. The hearing examiner noted that the inspection report stated that a barber was present and he had equipment in his station including two sets of clipper, scissors and combs. Ms. Komba again stated that he was just a friend that was visiting and she did not know about the equipment.

Mr. Knotts testified at the hearing of Ibrahima Diasse. He stated that Mr. Diasse operated a shop called "Maty African Hair Braiding" without a license. (R.R. at 167a). He observed hair dryers, combs, clips, scissors, shampoo, conditioner, mousse and hair spray. He noted that there were signs regarding payment by credit card and business cards. He saw dirty towels on the shampoo basin, uncovered trash cans and a hair dryer plugged in on the floor. Mr. Diasse did not testify.

3. The testimony of Mr. Balde was considered as part of the record in each of the four hearings.

Mr. Knotts testified at the hearing of Cheikh Kebe. He stated that Ms. Kebe operated a shop called "Amy African Braiding Shop" without a license. (R.R. at 213a). He stated that he observed people braiding hair. He also saw photographs of different braids and Visa and MasterCard emblems. He noted a sign that refused to give customers money back and one that offered a payment system. He also saw flyers and business cards. He presented a picture of a shampoo basin, a work station with hair care products and a hair dryer on the floor. There was also a dish with cigarette lighters, clips and rubber bands. Mr. Kebe did not testify.

The hearing examiner determined that Petitioners had all operated a shop without a license. Petitioners were each ordered to pay a civil penalty of 500 dollars. Petitioners then filed a consolidated appeal to the Board. The Board affirmed the determinations of the hearing examiner. It held that hair braiding did fall within the definition of cosmetology as set forth in Section 1 of the Law, 63 P.S. § 507. The Board further noted that that it was not authorized to consider the constitutional issues raised by Petitioners.

■ Petitioners now appeal to this Court.[4] Petitioners allege: (1) that the Law does not apply to hair braiding, that the legislature did not intend the Law to apply to hair braiding and that the Board's interpretation of the Law exceeds the legislature's intent; (2) that the definition of cosmetology does not include the work performed by Petitioners; (3) that the application of the Law violates Petitioners' right to Equal Protection and Substantive Due Process under the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania; and (4)

that the findings of fact and conclusions of law are not supported by substantial evidence.

Petitioners were found to have violated Section 2 of the Law which provides as follows:

It shall be unlawful for any person to practice or teach cosmetology, to use or maintain any place for the practice of cosmetology, for compensation, or to use or maintain any place for the teaching of cosmetology, unless he or she shall have first obtained from the department a license as provided in this act.

■ Petitioners first allege that hair braiding does not come under the definition of cosmetology as set forth in the Law. Cosmetology is defined as follows:

'Cosmetology' includes any or all work done for compensation by any person, which work is generally and usually performed by cosmetologists, which work is for the embellishment, cleanliness and beautification of the human hair, such as arranging, dressing, curling, waving, permanent waving, cleansing, cutting, singeing, bleaching, coloring, pressing, or similar work thereon or thereabout, and the removal of superfluous hair, and the massaging, cleansing, stimulating, manipulating, exercising, or similar work upon the scalp, face, arms, or hands, or the upper part of the body, by the use of mechanical or electrical apparatus or appliances or cosmetics, preparations, tonic, antiseptics, creams or lotions, or by any other means, and of manicuring the nails, which enumerated practices shall be inclusive of the term cosmetology but not in limitation thereof.

Section 1 of the Act.

Petitioners argue that hair braiding is not specifically mentioned in the definition

---

4. Our scope of review of an order of the Board is limited to determining whether constitutional rights were violated, an error of law committed, or whether the findings of fact are supported by substantial evidence of record. *Ralph v. State Board of Cosmetology,* 822 A.2d 131 (Pa.Cmwlth.2003).

of cosmetology and, thus, cannot be characterized as cosmetology. The Board rejected this claim noting that the definition is not exclusive and uses the language "or similar work thereon. and thereabout." The Board found that braiding could be classified as "similar work" or "arranging."

■ Following the principles of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1928, the definition at issue must be construed liberally. Also, the words are to be given their common usage and plain meaning. *Kosanovich v. Retirement Board of Allegheny County*, 724 A.2d 420 (Pa.Cmwlth.1999). As such, we believe that braiding and adding extensions to hair qualifies as embellishment, beautification, dressing or arranging of hair. It could also qualify as "similar work thereon or thereabout." Thus, the Board did not err in concluding that hair braiding is encompassed in the definition of cosmetology.

Petitioners also allege that the practice of braiding can only be characterized as cosmetology if it is performed for all three of the stated purposes in the definition—embellishment, cleanliness and beautification. They claim that since braiding usually does not involve the cleaning of hair, it therefore does not come under the definition of cosmetology.[5] The Board disagreed, noting that when determining legislative intent, it is presumed that the legislature did not intend an absurd or unreasonable result. 1 Pa. C.S. § 1922. To adopt the reasoning of Petitioners would mean that an individual could perform all types of treatments to hair as long as the hair was not cleaned. As such, we agree with the Board that this argument is without merit.

Petitioners' second allegation[6] is that they do not perform work "generally and usually performed by cosmetologists." Petitioners argue that since they do not use chemicals, color, perm, bleach, singe or press, they do not come under the definition of cosmetology. This argument by Petitioners ignores the fact that their work does provide a service that comes under the definition of cosmetology as stated. They do arrange hair, beautify hair, embellish hair, dress hair and occasionally clean hair. Therefore, the services provided do meet the definition of cosmetology.

[4] Petitioners' third allegation is that application of the Law to the activities of the Petitioners violates Substantive Due Process rights under the Fourteenth Amendment of the United States Constitution, Article I, Section 1 of the Pennsylvania Constitution, the Equal Protection Clause, Section 1 of the Fourteenth Amendment of the United States Constitution and Article I, Section 26 of the Pennsylvania Constitution.

■ The Due Process Clause, under both the United States and the Pennsylvania Constitutions, protects life, liberty and property interests. *Pennsylvania Medical Society v. Foster*, 147 Pa.Cmwlth. 528, 608 A.2d 633 (1992). The Commonwealth of Pennsylvania may lawfully exercise its "police power to protect the public health, safety, welfare and morals by promulgating statutes which reasonably regulate occupations." *Pennsylvania Medical Society*, 608 A.2d at 637. However, "[a]n overbroad statute violates substantive due process by depriving a person of a constitutionally protected interest through means which are not rationally related to

---

5. While Mr. Balde testified that there were times when a customer's hair did not need to be washed, he did not claim that hair braiders never washed a customer's hair. In fact, shampoo and a shampoo basin were found at Ms. Diasse's and Ms. Komba's shops. Ms. Kebe's shop also had a shampoo basin.

6. This claim consists of a one and one-half page argument made without any citations.

a valid state objective because [it] 'sweep[s] unnecessarily broadly.' " *Pennsylvania Medical Society*, 608 A.2d at 637.

The Equal Protection Clause of the Pennsylvania Constitution is analyzed under the same standard as claims brought under the Fourteenth Amendment to the United States Constitution. *Paz v. Pennsylvania Housing Finance Agency*, 722 A.2d 762 (Pa.Cmwlth.1999). The Equal Protection Clause has been interpreted as follows:

> The right to engage in a particular occupation is an important right but not a fundamental right and, therefore, is subject to the rational basis test, i.e., a state may not deprive an individual of that right unless it can be shown that such deprivation is reasonably related to the state interest that is sought to be protected.

*Warren County Human Services v. State Civil Service Commission (Roberts)*, 844 A.2d 70, 73 (Pa.Cmwlth.2004). As such, this Court's review under both the Due Process and Equal Protection Clauses is the rational basis test.[7]

 When conducting an examination under the rational basis test "the reviewing court is free to hypothesize reasons which the legislature could have had for the classification, i.e., the courts are free to hypothesize a legitimate state goal which the classification serves." *Paz*, 722 A.2d at 765. Also, the legislature is not required to provide evidence to justify its classification. *Paz*, 722 A.2d at 765. The legislation is presumed constitutional under a rational basis challenge and "the person challenging a statute under the rational basis test has the burden to show that under no state of facts can the classification further any conceivable legitimate state goal." *Paz*, 722 A.2d at 765. This is a heavy burden under which those attacking the constitutionality of a law "have the burden to 'negative every conceivable basis which might support it.' " *Paz*, 722 A.2d at 765 (quoting, *Federal Communications Commission v. Beach Communications*, 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)).

The question of whether the Law is unconstitutional as applied to hair braiders is an issue of first impression in Pennsylvania. The only case on point is *Cornwell v. Hamilton*, 80 F.Supp.2d 1101 (S.D.Cal. 1999).[8]

In *Cornwell*, Joanne Cornwell an African hair stylist and a nonprofit African hair styling association (collectively plaintiffs) alleged violations of their Substantive Due Process and Equal Protection rights. The United States District Court for the Southern District of California (federal court) analyzed the case under the rational basis standard.

Ms. Cornwell testified regarding the technique she used to braid hair and explained what hair styling procedures she used and did not use in creating braids. The plaintiffs provided extensive information on the practice of braiding and how it applied to the instruction given at California cosmetology schools. Experts testified

---

7. Strict scrutiny is applicable where the law is discriminatory on its face or where the law was motivated by a racial purpose. *Hunt v. Cromartie*, 526 U.S. 541, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999). Petitioners' agree that strict scrutiny does not apply in the instant action.

8. While we acknowledge the legal reasoning set forth in *Cornwell*, "[a]bsent a pronounce-ment by the United States Supreme Court, decisions of the inferior federal courts are not binding on state courts." *City of Philadelphia v. Pennsylvania Public Utility Commission*, 676 A.2d 1298, 1305 n. 10 (Pa.Cmwlth.1996), *petition for allowance of appeal denied*, 546 Pa. 657, 684 A.2d 558 (1996), *certiorari denied*, 520 U.S. 1155, 117 S.Ct. 1334, 137 L.Ed.2d 494 (1997).

on the instruction given in California cosmetology schools and the textbooks used at the schools. The plaintiffs also provided evidence regarding the California cosmetology licensing examination and its validation report.

The federal court determined that the textbooks only showed illustrations of Caucasian models and only contained one paragraph on African hair. The federal court also determined that courses in hair braiding were rarely if ever taught and rarely if ever tested. The federal court concluded that only 4% of the California course requirements (those relating to health and safety) would be applicable to Ms. Cornwell's profession. As such, the federal court determined that Ms. Cornwell's activities were minimal in scope to a cosmetologist and that the licensing examination and mandated curriculum, as structured, was not rationally related to the state's interests.

In the instant case, none of the Petitioners provided any testimony regarding the nature of their businesses. Testimony was not supplied as to whether or not the businesses were limited solely to hair braiding or what processes Petitioners actually used and/or did not use when braiding hair. None of the Petitioners even testified that they limited their business solely to hair braiding. The only testimony in this regard came from Mr. Balde.[9] Mr. Balde claimed that he contacted "almost every school of cosmetology in Philadelphia" and hair braiding courses were not offered. (R.R. at 43–4a). However, he did not state how many schools that entailed. He also did not state whom he contacted at the schools and more importantly he did not state when he contacted the schools. Mr. Balde testified that he opened his braiding shop in 1994. We do not know if he contacted the cosmetology schools at that time or more recently. We are also left without any information regarding schools outside the Philadelphia area. Moreover, evidence was not presented as to what courses were offered at any of the schools and whether or not those courses might be relevant to hair braiders. We cannot presume that any class not specifically labeled hair braiding is irrelevant to Petitioners' business i.e., we do not know if Mr. Balde questioned the schools regarding courses for hair weaving or hair extensions or regarding courses for hair of certain textures. Actually, we were not given any information regarding how Mr. Balde determined that hair braiding courses were not offered. Additionally, the cosmetology licensing exam and its application to Petitioners' allegedly limited businesses was not mentioned.

The curriculum requirements for a cosmetology school in Pennsylvania require an applicant to complete 1250 hours of training. 49 Pa.Code § 7.129. It is recommended that applicants receive 50 hours in professional practices training, 200 hours in sciences and 1000 hours in cognitive and manipulative procedures. It is impossible for this Court to determine whether or not cosmetology schools provide curriculum rationally related to Petitioners' profession with such minimal information. Therefore, we conclude that Petitioners did not meet their burden in establishing that the Law was unconstitutional in its application.

Petitioners' final allegation is that the findings and conclusions of the Board that they engaged in the practice of cosmetology are not supported by substantial evidence. In essence, Petitioners are rearguing the claims made above that hair

---

9. Mr. Balde testified that he operates a hair braiding shop. He did not state whether or not he had a cosmetology license.

braiders do not engage in the activities set forth in the Law because they to do not color, cut, perm, bleach or heat hair and that the Law is applied too broadly because cosmetology schools do not offer classes in hair braiding. As the record indicates that Petitioners' activities do meet the definition of cosmetology and that Petitioners did not establish that the Law as applied is unconstitutional, these allegations are without merit.

Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, this 1st day of July, 2004, the order of the State Board of Cosmetology is affirmed.