**COMMONWEALTH of Pennsylvania**

v.

**Elva Iris HAKE, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Dec. 7, 1998.

Decided Sept. 8, 1999.

Robert D. Glessner, York, for appellant.

Anne E. Zerbe, York, for appellee.

Before PELLEGRINI, J., FLAHERTY, J., and JIULIANTE, Senior Judge.

FLAHERTY, Judge.

Elva Hake (Defendant) appeals an order of the Common Pleas Court of York County (trial court) finding her guilty of violating what is commonly called the "Dangerous Dog Statute" (Statute) of the Commonwealth's Dog Law for harboring a dangerous dog and fining her $200 plus costs.[1] We affirm.

On January 13, 1998, seven-year old Katie Blankenstein (Child) was returning home from school at 4:00 p.m. when a male Pit Bull Terrier (Dog) ran out of a house and bit the Child on the leg. Norma Hendricks (Victim), an adult passerby taking her daily walk, observed the commotion and crossed the street toward the scene. Realizing that she was not physically capable of managing the Dog, she turned away and ran back across the street to get help for the Child.

The Dog pursued the Victim across the street, seizing her leg and causing her to fall on the ground. The Dog continued to clench the Victim's leg in a vice-like grip, pinning the Victim on the ground until the Defendant arrived and removed the Dog from the Victim's body. As a result of the attack, the Victim suffered bruises to her body and a puncture wound to her leg, which bled for several days.

Officer Jeffrey Georg (Officer) of the Springettsbury Township Police Department, assigned to a school crossing nearby, observed the Victim on the ground with the Dog on top of her, got into his police car and drove to her location. As the Officer approached the Dog on top of the Victim, the Defendant arrived on the scene, got out of her car, dislodged the Dog from the Victim, and put the Dog into her car.

---

1. The Dog Law is the Act of December 7, 1982, P.L. 784, *as amended*, 3 P.S. § 459–101 through § 459–1205. The Defendant was charged pursuant to 3 P.S. § 459–502–A, which is one section of a group of statutes at 3 P.S. § 459–501–A through § 459–507–A which, collectively, are commonly known as the Dangerous Dog Statute.

At the scene, the Defendant advised the Officer that she was the owner of the Dog and that the Dog had escaped Defendant's house through a door that does not proper-ly close. The Officer observed that the Dog had no collar. Later, the Defendant informed the Officer that the Dog was not licensed.

The Defendant was later issued a Non–Traffic Summons from Officer Cathy Purcell of the Enforcement Division of the Department of Agriculture, based upon information received from the witness Officer. The citation to the Defendant read that Defendant was the "owner or keeper ... harboring a dog named "Ice" pitbull male [sic] that did attack two people without provocation on January 13, 1998 ... in violation of Title 3, Act 151, Section 459–502–A subsection (a)" (Section 502–A).

At the May 27, 1998 hearing, testimony was taken from the Victim, from the Child, from the Officer, from the Defendant and from the twelve-year-old boy who was claimed to have accidentally let the Dog out of the house.[2] Following the hearing, the Defendant was found guilty of a summary offense of harboring a dangerous dog in violation of the Statute and was fined $200. This appeal followed.[3]

The Defendant claims that the trial court's adjudication is an error of law on two counts, contending that the Court's imposing criminal liability on the keeper of a dog for the dog's first attack is contrary to Pennsylvania law and that the 1996 amendments to the Dog Law did not change the longstanding rule that an owner must have notice of a dog's vicious propensity to be held liable for an attack.

This case presents the first impression of interpreting whether or not under the 1996 amendments to the Statute that owners or keepers of dogs should be criminally liable for every unprovoked attack on a human being, including the first one.[4] In reaching this determination, the Court must decide if scienter is an essential element to criminal liability under the Statute.[5]

2. At the May 27, 1998 hearing, the Defendant was represented by counsel and the Commonwealth was represented by the York County District Attorney's office, who is the Respondent in this appeal. The Defendant testified that she lived with her boyfriend, Joseph Shafer and his twelve-year-old son, Joseph Shafer, Jr. The Defendant further testified that although she was not the owner-in-fact of the Dog, the Dog was registered to her boyfriend, Joseph Shafer, Sr., and the dog was a "household dog."

3. Jurisdiction lies in the Commonwealth Court, as opposed to the Superior Court, because the Dangerous Dog Law at 3 P.S. § 459–502–A is not a penal statute under the Crimes Code (Title 18), but is a regulatory statute, administered and enforced by the Department of Agriculture (Title 7, Chapter 27 of the Pa.Code). Therefore, in accordance with 42 Pa.C.S. § 762 A(2)(ii), this Commonwealth Court has exclusive jurisdiction of appeals from final orders of the courts of common pleas in Commonwealth regulatory criminal cases for criminal actions or proceedings for the violation of any regulatory statute administered by a Commonwealth agency not included in Title 18 relating to crimes and offenses. Here, the dog warden of the Commonwealth's Department of Agri-culture issued the citation for violation of the Commonwealth's Dog Law.

4. This Court's scope of review of a statutory appeal where, as here, the matter has been heard by the trial court de novo is whether the trial court's findings are supported by substantial, competent evidence or whether errors of law have been committed or whether the trial court's determinations demonstrate a manifest abuse of discretion. *Commonwealth v. Figley*, 663 A.2d 873 (Pa.Cmwlth.1995), *affirmed on appeal*, *Eritano v. Commonwealth, ex rel. Figley*, 547 Pa. 372, 690 A.2d 705 (1997).

5. This Court recently interpreted similar amendments to other sections of the Dog Law in *Commonwealth v. Comella*, 735 A.2d 738 (Pa.Cmwlth.1999)(1999 Pa. Commw. LEXIS 596). We reiterate *verbatim* that,

"This Court's aim in statutory construction is to ascertain and effectuate the intent of the legislature. Section 1921(a) of the Statutory Construction Act of 1972(Act), 1 Pa.C.S. § 1921(a). When the language of a statute is clear and unambiguous, any further deliberation as to its meaning is unwarranted. Section 1921(b) of the Act, 1 Pa.C.S. § 1921(b); *American*

Defendant argues that the trial court erred by using a commonsense use of the term "dangerous," and not the legal term "dangerous dog" as defined in the Statute, thus subjecting dog owners and keepers to absolute criminal liability for the "first bite," in contravention of the Supreme Court's decision in *Eritano v. Commonwealth*, 547 Pa. 372, 690 A.2d 705 (1997).[6] Since the 1996 amendments specifically deleted the definitions under the Statute, Defendant's argument relies upon the history of the Statute that a dog is only dangerous if it has a "history" or "propensity" to attack human beings without provocation, that the legislature has not defined these terms, and that there is no case law interpreting these terms under

> *Trucking Associations, Inc. v. Scheiner*, 510 Pa. 430, 509 A.2d 838 (1986), *rev'd on other grounds*, 483 U.S. 266, 107 S.Ct. 2829[, 97 L.Ed.2d 226] (1987). If the words of a statute are not explicit, we may consider, among other matters, the occasion and necessity for the statute, the circumstances under which it was enacted, the mischief to be remedied, the object to be attained, the former law, if any, including other statutes upon the same or similar subjects, the consequences of a particular interpretation, the contemporaneous legislative history and the legislative and administrative interpretations of the statute. Section 1921(c)(1–8) of the Act, 1 Pa.C.S. § 1921(c)(1–8); *Meier v. Maleski*, 670 A.2d 755, 759, (Pa.Cmwlth. 1996), *affirmed*, 549 Pa. 171, 700 A.2d 1262 (1997). Ordinarily, a change in the language of a statute indicates a change in the legislative intent. *Commonwealth v. Pierce*, [397 Pa.Super. 126,] 579 A.2d 963, 965 (Pa.Super.1990), *petition for allowance of appeal denied*, 527 Pa. 609, 590 A.2d 296 (1991). However, when interpreting a statute, the practical results of a particular interpretation must be considered. Section 1921(c)(6) of the Act, 1 Pa.C.S. § 1921(c)(6); *Meier*, 670 A.2d at 760. Further, the legislature cannot be presumed to have intended a result that is absurd or unreasonable. *Eritano v. Commonwealth*, 547 Pa. 372, 690 A.2d 705 (1997)." *Comella* at 735 A.2d 738, 740, 1999 Pa. Commw. LEXIS 5,6.

**6.** *Eritano* interpreted the Statute *prior to* the 1996 amendments, where the language requiring a "history" or "propensity to attack" were still part of the language of the Statute.

the 1996 amendments, any or all of which should exonerate Defendant.

Defendant's argument is flawed. The 1996 amendments to the Statute no longer require that the dog be found specifically "dangerous." After the amendments, the Statute imposes liability where any of the following situations arise:

1) a dog, while on public or private property, inflicts *severe* injury on a human being without provocation; *or*

2) attacks a human being without provocation *and* where the dog has either (or both) a *history* of attacking human beings or animals without provocation *or* a *propensity* to attack human beings and/or domestic animals without provocation.[7]

The dog bite in *Eritano* occurred in 1991. The dog bite in the present instance occurred in 1998, well after the effective date of the 1996 amendments.

**7.** The Statute was added to the Dog Law by Section 2 of the Act of May 31, 1990, P.L. 213, No. 46. Additionally, significant amendments (the 1996 amendments) to the Statute were made by Section 13 of the Act of December 11, 1996, P.L. 943, No. 151 (Act 151). The 1996 amendments repealed and deleted the definition section of the Statute and added significant changes to Section 502–A, under which the Defendant was charged. Reproduction of the language of the Statute, showing in strikeout and brackets the former language which was deleted and emphasizing with italics the additions made by the legislature, demonstrates the legislative intent to remove "evidence of a dog's history or propensity to attack without provocation" as a criteria to being liable under this Section.

3 P.S. 459–502–A Registration.

(a) [Determination] *Summary offense of harboring a dangerous dog.* —Any person who has been attacked by [a dog] *one or more dogs*, or anyone on behalf of such person, a person whose domestic animal has been killed or injured without provocation, the State dog warden or the local police officer may [make] *file* a complaint before a district justice, charging the owner or keeper of such a dog with harboring a dangerous dog. [The determination of a dog as a dangerous dog shall be made by the district justice upon evidence of a dog's history or propensity to attack without provocation based upon an incident in

Most importantly, the 1996 amendments specifically provide that the propensity to attack may be proven by a single incident of the infliction of severe injury or attack on a human being, clearly permitting a finding of a "propensity" to attack human beings by virtue of the attack in question, even if it is only the first attack. While this interpretation *may* impose absolute criminal liability for any unprovoked attack by the owner or keeper's dog, such an interpretation is not without basis in predecessor dog statutes.[8]

The Defendant further argues that criminal liability generally requires "scienter", and that under cases interpreting the prior language of the Statute, the courts held that the owner must have not only actual knowledge of the propensity of the dog to attack, but must have constructive knowledge that the attack at issue was forthcoming.[9] This is clearly not applicable after the 1996 amendments. In *Baehr*, this Court held that under the predecessor Dog Law [10], "it [is] clear that scienter is not a necessary element of a violation."

*Baehr v. Commonwealth*, 51 Pa.Cmwlth. 241, 414 A.2d 415, 417 (1980).

Like sections of the predecessor statute, the 1996 amendments unmistakably impose strict liability for violation of the Statute. The legislature is clearly permitted to make such a change. "The reasons for sustaining legislation which makes certain acts crimes and punishable as such without regard to defendant's motive, intent, reasonableness or good faith, are ... (1) To require a degree of diligence for the protection of the public and (2) convenience of enforcement." *Id.* at 417, *citing Commonwealth v. Fine*, 166 Pa.Super. 109, 70 A.2d 677 (1950). Without permitting a strict liability interpretation of this statute, the difficulty of establishing culpability for injuries would surely frustrate the purpose of the Statute.

The 1996 amendments clearly address the legislature's response to holdings, such as *Eritano*, which required multiple incidents before liability could have been im-

---

which the dog has done one or more of the following: ] *The owner or keeper of the dog shall be guilty of the summary offense of harboring a dangerous dog if the district justice finds beyond a reasonable doubt that the following elements of the offense have been proven:*
*(1) The dog has done one or more of the following:*
*(i)* Inflicted severe injury on a human being without provocation on public or private property.
*(ii)* Killed or inflicted severe injury on a domestic animal without provocation while off the owner's property.
*(iii)* Attacked a human being without provocation.
*(iv)* Been used in the commission of a crime.
*(2) The dog has either or both of the following:*
*(i) A history of attacking human beings and/or domestic animals without provocation.*
*(ii) A propensity to attack human beings and/or domestic animals without provocation. A propensity to attack may be proven by a single incident of the conduct described in paragraph (1)(i), (ii), (iii) or (iv).*

*(3) The defendant is the owner or keeper of the dog.*

8. *See Baehr v. Commonwealth*, 51 Pa.Cmwlth. 241, 414 A.2d 415 (1980)(interpreting the Dog Law of 1965, *repealed by* the Act of Dec. 7, 1982, P.L. 784, and replaced by the Dog Law, 3 P.S. § 459–101 through § 459–1205).

9. In that respect, the Respondent District Attorney argues that a statute imposing criminal liability can be construed as one not requiring criminal intent where the standard imposed is, under the circumstances, reasonable and
1) Adherence to the statute is properly expected of a person;
2) Where the penalty is relatively small;
3) Where conviction does not gravely besmirch;
4) Where the statutory crime is not one taken over from the common law; and
5) Where legislative purpose is supporting. *Concurring Opinion Commonwealth v. Mikulan*, 504 Pa. 244, 264, 470 A.2d 1339, 1349 (1983).

10. *Formerly* the Act of December 22, 1965, P.L. 1124, *as amended*, 3 P.S. § 460–702, *now repealed by* the Act of Dec. 7, 1982, P.L. 784, *and replaced by* the Dog Law, 3 P.S. § 459–101 through § 459–1205.

posed. The 1996 amendments added specific words such as "single incident" to ensure that where it is clear from one attack that a dog is dangerous, that the "owners *or* keepers" are criminally liable for the summary offense of harboring a dangerous dog. The 1996 amendments effectively removed the previous "one free bite" interpretation and the Statute now permits liability for the dog's first bite.

Consequently, in light of the plain language of the Statute after the 1996 amendments, the trial court correctly interpreted and applied the Statute and its decision will not be overturned. Accordingly, we affirm.

### ORDER

AND NOW, this 8th day of September, 1999, in the above captioned matter, the decision of the Court of Common Pleas of York County, Pennsylvania at No. 105–CA–98 is hereby AFFIRMED.