COMMONWEALTH of Pennsylvania

v.

**Barbara Jean LOPEZ, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 10, 2006.

Decided Sept. 28, 2006.

Ronald L. Russell, Greensburg, for appellant.

Noah A. Erde, Meadville, for appellee.

BEFORE: McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge SMITH–RIBNER.

Barbara Jean Lopez appeals from an order of the Court of Common Pleas of Crawford County that found her guilty of thirty-four counts of violating Section 201 of the Dog Law, Act of December 7, 1982, P.L. 784, *as amended*, 3 P.S. § 459–201, relating to applications for dog licenses, and guilty of twenty-nine counts of violating Section 8 of the Rabies Prevention and Control in Domestic Animals and Wildlife Act (Rabies Act), Act of December 15, 1986, P.L. 1610, *as amended*, 3 P.S. § 455.8, relating to vaccinations required, both of which are summary offenses. Lopez questions whether these provisions applied to her in this case and whether the trial court had evidence beyond a reasonable doubt that Lopez owned all of the dogs that the trial court found that she owned.

A non-jury trial in this matter was conducted on December 14, 2004. The sole witness, Roland Yochum, stated that he is employed by the Department of Agriculture, Bureau of Dog Law, as a Dog Warden primarily in Crawford County. He testified that on April 24, 2004 he and another person went to the residence of Lopez on Route 408 in Troy Township by appointment to determine if the kennel license previously issued for the property had been renewed or if the property no longer needed a license. He indicated that Lopez came out from the mobile home on the property and met them at the gate. There were approximately twelve pens in which dogs were housed around the driveway and the home, and Lopez took Yochum and the person with him to each of the pens and identified the dogs by names, types and gender. Yochum observed half-full bowls of food and water in the pens, and he saw Lopez fork straw into a pen.

Yochum additionally testified that Lopez told him that she and her husband, Mr. Lopez, were separated and that he had moved out. The dogs remained at the residence, and she was caring for them. There were thirty-four dogs, and Yochum determined that by their size and the amount of their hair they were all mature dogs. Lopez did not have a license for any of the dogs. Yochum also determined that Lopez did not have rabies vaccination certificates for twenty-nine of the dogs. He agreed that a licensed kennel had existed at the premises previously and that the premises appeared to be the same as when it was a licensed kennel, although there was no current kennel license.

In its opinion and verdict of December 14, 2004 and in its opinion pursuant to Pa. R.A.P.1925 on Lopez' statement of matters complained of on appeal, the trial court noted that when a kennel is being operated it is not necessary for each dog to be registered so long as the kennel has a kennel license issued by the Department of Agriculture. Section 207 of the Dog Law, 3 P.S. § 459–207. However, there was no evidence that a kennel was being operated at the time of the visit, and there was no kennel license. The court quoted the definition of "kennel" in Section 102 of the Dog Law, 3 P.S. § 459–102, which lists as examples various purposes for which dogs in a kennel are kept, including breeding, training and rental, and it concluded that there was no evidence that the premises met that definition.[1] Therefore, the individual dogs were required to be licensed. As to whether Lopez was the "owner" of

the dogs and so required to secure the licenses, the court quoted the definition of "owner" in Section 102 of the Dog Law, which includes both a person who has a property right in a dog and a person who keeps or harbors a dog and has it in his or her care.[2]

The trial court determined that the Commonwealth established that Lopez was harboring and caring for the dogs and permitting them to remain at her property. As for the charged violations of the Rabies Act, the court noted that neither the act nor the implementing regulations define "owner," but the court concluded that it made sense to use the same definition as in the Dog Law. The court found Lopez guilty of the sixty-three citations and ordered that she pay a fine of $25.00 and costs for each.

Lopez first contends that Section 201 of the Dog Law and Section 8 of the Rabies Act do not apply; rather, the kennel laws apply to the dogs at issue. Lopez states that there was no credible evidence that Mr. Lopez failed to apply timely to renew his kennel license or that he was ever advised that his license would not be renewed and afforded due process of law. She refers to testimony of Yochum stating that he made the appointment to follow up on why the kennel license was not renewed for the year 2004, N.T. p. 6, Reproduced Record (R.R.) 31; that they went there to find out if the kennel license had been renewed or if the operation had been closed, downsized or moved, N.T. p. 7, R.R. 32; and that Yochum knew that Mr.

---

1. Section 102 defines "Kennel" as "[a]ny establishment wherein dogs are kept for the purpose of breeding, hunting, training, renting, research or vivisection, buying, boarding, sale, show or any other similar purpose and is so constructed that dogs cannot stray therefrom."

2. Section 102 defines "Owner" as follows:

When applied to the proprietorship of a dog, includes every person having a right of property in such dog, and every person who keeps or harbors such dog or has it in his care, and every person who permits such dog to remain on or about any premises occupied by him.

Lopez had not applied for a license, N.T. p. 22, R.R. 47.

Lopez states that the trial court did not allow questioning on cross-examination to show that the kennel remained in operation as a kennel, citing N.T. pp. 25–28, R.R. 50–53.[3] Yochum did testify, however, that basically nothing about the operation had changed since the time when he knew that there was a license. Lopez quotes the definition of "kennel" in Section 102 of the Dog Law, *see* n. 1 above, and she points out that the definition makes no reference to a license. Rather, the license requirement is stated in Section 206, 3 P.S. § 459–206, which provides in part:

(a) **Applications, kennel license classifications and fees.**—Any person who keeps or operates a Class I, Class II, Class III, Class IV or Class V Kennel, Boarding Kennel Class I, Boarding Kennel Class II, Boarding Kennel Class III or nonprofit kennel shall, on or before January 1 of each year, apply to the department for a kennel license.... A kennel license is required to keep or operate any establishment that keeps, harbors, boards, shelters, sells, gives away or in any way transfers a cumulative total of 26 or more dogs of any age in any one calendar year. All kennel licenses shall expire on December 31.

Lopez asserts that under the statute a license is something applied for because a kennel exists, not something that makes a kennel exist. She maintains that Section 207(a.1), 3 P.S. § 459–207(a.1), sets forth the procedure for dealing with a kennel operating without having or renewing its license.[4]

Lopez argues that this is a case where a kennel not belonging to her is alleged to have failed to renew its license. She characterizes Yochum's testimony as conflicting in regard to whether he knew that the license had not been renewed, and she states that he never spoke to the kennel's owner, Mr. Lopez, to find out. She submits that the Commonwealth failed to produce sufficient evidence that the kennel had ceased to exist so as to permit a person who worked at the kennel to become the dogs' owner, and she finds no evidentiary support for the trial court's statement that no license had been issued and therefore for its conclusion that the operation did not meet the definition of a kennel. Rather, the kennel law applied but instead of following procedures set forth in Section 207(a.1), the authorities inappropriately charged Lopez. Under the assertedly overbroad wording in the definition of owner, any worker at a kennel would be the owner of all the dogs for which he or she cared. Without citation, Lopez argues that the statutory definition permits ownership to attach in an arbitrary manner based on casual human to

---

3. On cross-examination Lopez' counsel questioned whether it was the responsibility of a kennel owner, rather than others, to take care of the dogs. Counsel for the Commonwealth objected on the grounds of relevance, and the trial court sustained the objection stating that there had been no showing that there was a kennel because there was no showing of a license.

4. Section 207(a.1) provides:
   **Prohibition to operate; injunction; fines.**—It shall be unlawful for kennels described under section 206 to operate with-

out first obtaining a kennel license from the department. The secretary shall not approve any kennel license application unless such kennel has been inspected and approved by a State dog warden or employee of the department. The secretary may file a suit in equity in the Commonwealth Court to enjoin the operation of any kennel that violates any of the provisions of this act. In addition, the secretary may seek in such suit the imposition of a fine for every day in violation of this act for an amount not less than $100 nor more than $500 per day.

dog contact and permits the imposition of serious financial responsibility upon a person without his or her knowledge due to the failure of the kennel owner to act.

Lopez' closely related second argument is that there was no evidence before the trial court to prove beyond a reasonable doubt that she owned all of the dogs that it determined she owned. Although familiar with the statutory definition of owner, Yochum responded *"no"* when asked if he had anything to prove that Lopez was the owner of the dogs. N.T. p. 24, R.R. 49. He stated that Lopez told him that Mr. Lopez had all of the information concerning current licenses and vaccinations. Further, she asserts that there was nothing of record to show that she owned the trailer or the land, and she contends that it is only an assumption that the area where the kennel was located was part of the parcel with the trailer in which she resided. Without sufficient proof that the dogs were at Lopez' residence, she is not established as the owner under the statute, and the conviction cannot stand.

The Commonwealth states that the proper standard of review of the sufficiency of the evidence to sustain a conviction is to view the evidence in the light most favorable to the Commonwealth as the verdict winner and to accept as true all evidence and reasonable inferences upon which, if believed, the fact finder could have based the verdict and to determine whether such evidence and inferences are sufficient to prove guilt beyond a reasonable doubt, citing *Commonwealth v. Rhodes*, 510 Pa. 537, 510 A.2d 1217 (1986). It responds to the second argument first, stating that at the summary appeal trial it provided the trial court with evidence that proved beyond a reasonable doubt that

Lopez owned all of the dogs found at the premises. Yochum testified that Lopez told him that her husband had moved out, that she lived alone at the premises and that she was the one taking care of the dogs. She identified each of them by name, and she was providing food and water. Countering Lopez' assertions regarding lack of proof of her ownership of the premises, the Commonwealth notes that Section 102 of the Dog Law does not require that a person be the land owner; it merely requires that she be a person who "keeps or harbors such dog or has it in [her] care" or who "permits such dog to remain on or about any premises occupied by [her]."

Second, the Commonwealth argues that Section 201 of the Dog Law and Section 8 of the Rabies Act apply. Section 8 of the Rabies Act provides in part: "(a) **Requirement.**—Every person living in this Commonwealth, owning or keeping a dog or cat over three months of age, shall cause that dog or cat to be vaccinated against rabies." Pursuant to Section 201(a) of the Dog Law: "the owner of any dog, three months of age or older, ... shall apply to the county treasurer of his respective county ... for a license for such dog." Although Lopez argues that the matter should be treated as one where a kennel was in operation and the operator failed to reapply for a license, the fact is that Lopez never owned or operated a kennel. After her husband left and she assumed the care of the dogs, she became the private owner of thirty-four dogs under the terms of Section 102 of the Dog Law. She could have applied for a kennel license, but she did not; hence, she was subject to the requirements of licensing and securing vaccinations.[5]

5. Although dogs in a licensed kennel need not have individual licenses under Sections 206 and 207 of the Dog Law, all dogs must be

vaccinated for rabies, with owners of certain kennels permitted to administer the vaccine

■ Under the facts established, the Court must affirm the order of the trial court. First, there is no question whatsoever that the credited testimony of Yochum supported a finding that Lopez was caring for the dogs and permitting them to remain "on or about" a premises occupied by her. That finding brought her within the definition of "owner" in Section 102 of the Dog Law, which by its express terms is broader than a person simply having a property interest in a dog. The plain intent of the statute is that dogs be licensed, and if one having the property interest in a dog does not perform that function, then the statute requires one harboring or caring for the dog to perform it. The object of all statutory interpretation is to ascertain and to give effect to the intent of the legislature. *See* Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1921(a).

■ Furthermore, Yochum's testimony that the former kennel license had not been renewed supported the trial court's determination that no license was in effect. Under Section 206 of the Dog Law, a kennel license is required to operate any establishment that keeps, harbors or transfers twenty-six or more dogs in a calendar year. In the absence of a valid kennel license, this was not a kennel. The Court notes that had a charge of operating a kennel without a license been successfully prosecuted, the minimum fine of $100 per day under Section 207(a.1) would have resulted in substantially greater fines.

■ The Court's review of the statutory appeal in this case where the trial court heard the matter de novo is limited to determining whether its findings are supported by substantial, competent evidence, whether it committed an error of law and whether it abused its discretion. *Com-*

*monwealth v. Hake,* 738 A.2d 46 (Pa. Cmwlth.1999). Based on its review, the Court holds that the trial court's findings were sufficiently supported and that it did not misapply provisions of the Dog Law or the Rabies Act in arriving at its conclusions. *Id.* The Court therefore affirms.

## *O R D E R*

AND NOW, this 28th day of September, 2006, the order and verdict of the Court of Common Pleas of Crawford County is affirmed.

FRIEDMAN, J., files dissenting opinion.

### DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. The majority holds that, when the operator of a kennel fails to renew a kennel license, the kennel does not become an unlicensed kennel subject to kennel laws; according to the majority, an unlicensed kennel is "not a kennel." (Majority op. at 996.) The majority also holds that, in addition to persons who have a property right in a dog, people who care for a dog or permit a dog to remain on premises occupied by them are "owners" of the dog and, as such, are responsible for the dog's license and rabies vaccination. (Majority op. at 995–96.) For the following reasons, I cannot agree.

The husband of Barbara Jean Lopez (Lopez) operated a licensed kennel but, when the couple separated, he failed to renew the kennel license. The Dog Warden visited Lopez to learn why her husband failed to renew the kennel license. Lopez informed the Dog Warden that she and her husband had separated, that she was taking care of the dogs and that her husband had all of the dog licenses and

pursuant to Section 8(b) of the Rabies Act, 3 P.S. § 455.8(b).

rabies vaccination certificates. Because Lopez could not produce the dog licenses and rabies vaccination certificates, the Dog Warden cited Lopez, as the owner of the dogs, for thirty-four dog license violations and twenty-nine rabies vaccination violations.[1] However, the Dog Warden admitted at trial that he had no proof that Lopez was the owner of the dogs. (*See* R.R. at 49.)

## I. "Kennel"

A kennel is not required to have a dog license for each dog kept at the kennel.[2] The majority concludes that Lopez was not caring for dogs at a kennel because an unlicensed kennel is "not a kennel." (Majority op. at 996.) I cannot agree.

### A. Statutory Definition

In ascertaining the intention of the General Assembly in the enactment of a statute, technical words are to be construed according to their peculiar meaning or definition. Section 1903(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903(a). Section 102 of the Dog Law defines "kennel" as follows:

> Any establishment wherein dogs are kept for the purpose of breeding, hunting, training, renting, research or vivisection, buying, boarding, sale, show or any other similar purpose and is so constructed that dogs cannot stray therefrom.

3 P.S. § 459–102. This definition does *not* state that a "kennel" is an establishment with a kennel license. Thus, unlike the majority, I conclude that a "kennel" without a license is still a "kennel."

Here, Lopez's husband operated a licensed "kennel" until he and Lopez separated. Certainly, if it was licensed, the husband's establishment fell within the statutory definition of "kennel." The Dog Warden testified that, when he visited Lopez, nothing in the keeping of the dogs had changed from when the husband had the kennel license. (C.R. at 53.) Thus, there can be no question that, although it had no license, the husband's establishment still fell under the statutory definition of "kennel."

### B. Section 206 of the Dog Law

Section 206 of the Dog Law states: "A kennel license is required to keep or operate any establishment that keeps . . . 26 or more dogs of any age in any one calendar year." 3 P.S. § 459–206. One cannot seriously argue that section 206 of the Dog Law requires a kennel license for establishments that are not "kennels." Thus, any establishment that keeps twenty-six or more dogs must be a "kennel." Here, Lopez's husband was keeping more than twenty-six dogs; thus, although he did not have a kennel license, he needed one to be in compliance with section 206. Because Lopez's husband needed a kennel license, his establishment must have been a "kennel."

### C. Abrogation of Kennel Licenses

In construing a statute, we presume that the General Assembly does not intend a result that is absurd. Section 1922(1) of

---

**1.** Section 201(a) of the Dog Law, Act of December 7, 1982, P.L. 784, *as amended,* 3 P.S. § 459–201(a), requires that the owner of any dog three months of age or older apply for a license for such dog. Section 8(a) of the Rabies Prevention and Control in Domestic Animals and Wildlife Act, Act of December 15, 1986, P.L. 1610, *as amended,* 3 P.S.

§ 455.8(a), requires that persons "owning or keeping" a dog over three months of age cause that dog to be vaccinated against rabies.

**2.** The Dog Warden conceded in his testimony that dogs kept in a kennel are not required to have dog licenses. (R.R. at 46–47).

the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(1). Suppose the Dog Warden had cited Lopez for operating a "kennel" without a license under section 206 of the Dog Law. Using the majority's reasoning, i.e., that an unlicensed kennel is "not a kennel," Lopez would have responded that, because she did not have a kennel license, she was not operating a "kennel." Thus, she did not need a kennel license. I submit that such a result is absurd.[3]

### D. Purpose of Kennel Licensure

Finally, I submit that the majority has misunderstood the purpose of a kennel license. Licenses are issued in order to regulate certain acts. *Pittsburgh Milk Company v. City of Pittsburgh*, 360 Pa. 360, 62 A.2d 49 (1948). A "kennel" license is issued to regulate the keeping of dogs in a "kennel." Without a "kennel," there is nothing to regulate and, thus, no need for a "kennel" license.

### II. "Owner"

The majority concludes that, in addition to persons with a property right in the dogs, Lopez was an "owner" of the dogs because she cared for them and permitted them to remain on premises occupied by her. I cannot agree.

### A. Statutory Definition

Section 102 of the Dog Law defines "owner" as follows:

When applied to the proprietorship of a dog, [the word "owner"] includes [1] ev-

ery person having a right of property in such dog, and [the word "owner" includes] [2] every person who keeps or harbors such dog or has it in his care, and [the word "owner" includes] [3] every person who permits such dog to remain on or about any premises occupied by him.

3 P.S. § 459–102 (emphasis added). The majority interprets this definition to mean that, at any given time, a dog may have multiple, unrelated "owners" with different interests. Thus, the majority states that "if one having the property interest in a dog does not [obtain a dog license], then the statute requires one harboring or caring for the dog to [obtain] it." (Majority op. at 996.)

In my view, the definition simply presents three scenarios that would result in *sole* "ownership" of a dog. First, if an individual has a right of property in a dog, the individual is "owner" of the dog. Second, if an individual encounters a stray dog and decides to keep and care for the dog, the individual is "owner" of the dog. Third, if a stray dog wanders onto property occupied by an individual who decides *not* to keep or care for the dog but to allow the dog to remain on the premises, the individual is "owner" of the dog. The definition does *not* suggest to me that, if an individual with a property right in a dog occasionally asks the neighbor's ten-year-old son to care for the dog, the boy is an "owner" of the dog.[4]

---

3. Moreover, if the majority is correct that an unlicensed kennel is "not a kennel," a Dog Warden can *never* cite an unlicensed establishment that falls within the statutory definition of "kennel" for failure to obtain a kennel license.

4. My interpretation of the definition avoids any confusion regarding the "ownership" of a dog. Suppose a hypothetical person named Mary purchases a pure bred puppy for

$2,000, spends thousands of dollars to prepare it for showing, wins dog shows and succeeds in making her dog extremely valuable for breeding purposes. Because Mary has a right of property in the dog, I consider Mary to be the sole "owner" of the dog. If Mary takes her dog to an elite kennel for special care or breeding, I do *not* consider the kennel-workers who keep or breed the dog and permit it to remain on the premises occupied by them to be "owners" of Mary's dog.

Here, there is no evidence that Lopez had a property right in any of the dogs kept at her husband's unlicensed kennel. Absent such evidence, I would conclude that the Dog Warden failed to prove that Lopez was the "owner" of the dogs.

### B. Bailment

Our supreme court has indicated that a dog owner may bring a breach of **bailment** action against a kennel for failure to return a dog. *Price v. Brown,* 545 Pa. 216, 680 A.2d 1149 (1996). This means that, when a dog owner takes a dog to a kennel, the dog owner enters into a bailment agreement with the kennel for care of the dog. "Bailment" has been defined as the "rightful possession of goods by one who is **not the owner**." Black's Law Dictionary 152 (8th ed. 2004) (quoting 4 Samuel Williston, *Law of Contracts* 2888 (rev. ed. 1938)) (emphasis added). Thus, although the majority holds otherwise, when a person with a property right in a dog takes the dog to a kennel, the fact that the kennel cares for the dog and permits it to remain on its premises does not make the kennel or its employees "owners" of the dog.

### C. Abandonment by Owner

Section 601(c)(2) of the Dog Law states that when a dog is placed in a kennel for care and is abandoned by its "owner," the dog may be turned over to the humane society ten days after proper notice is given to the "owner." 3 P.S. § 459–601(c)(2). If a kennel must give notice to the "owner" of an abandoned dog, then a kennel-worker cannot be the "owner" of the dog.

Because I conclude that Lopez simply was working at her husband's unlicensed "kennel" and was not the "owner" of the dogs, I would reverse.

---

If a kennel-worker takes Mary's dog, I consider it a theft. If I were to adopt the majority's position, however, there could not be a theft because the kennel-worker was a statutory "owner" of the dog. *See* section 601(a) of the Dog Law, 3 P.S. § 459–601(a) (stating that dogs are personal property and subjects of theft).