IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania    :
    :
v.    :
    :
Gavin Pennock,    :    No. 863 C.D. 2021
    Appellant    :    Submitted: July 22, 2022


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
    HONORABLE CHRISTINE FIZZANO CANNON, Judge
    HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON    FILED: October 28, 2022


Gavin Pennock (Appellant) appeals from the judgment of sentence entered in the Court of Common Pleas of Montgomery County (trial court) following his bench trial conviction for the summary offense of harboring a dangerous dog, in violation of Section 502-A of the Dog Law,[1] 3 P.S. § 459-502-A.[2] After careful review, we affirm.

On the morning of January 12, 2020, Merle Siegel left her fourth floor condominium in the Plymouth Hill Condominium in Plymouth Meeting,

<hr>

[1] Act of December 7, 1982, P.L. 784, *as amended*, 3 P.S. §§ 459-101 – 459-1206.

[2] Added by the Act of May 31, 1990, P.L. 213.

Montgomery County, Pennsylvania, to walk Tabby,[3] her 10-year-old, 8-pound miniature Yorkshire Terrier. *See* Notes of Testimony, April 14, 2021 (N.T.), at 4-5. As Ms. Siegel and Tabby prepared to exit the service elevator on the terrace floor of the building,[4] they encountered Appellant and his dog, a pit bull-mastiff-lab mix named Blue that was substantially larger than Tabby. *See id.* at 5, 7 & 12-13. The two dogs began barking at one another, as they had in the past. *See id.* at 5 & 40. Ms. Siegel and Appellant each tightened their hold on their dogs' leashes. *See id.* at 40. Appellant attempted to step out of Ms. Siegel's way as she exited the elevator but tripped and fell when the carpet he was standing on slipped out from under him.[5] *See id.* at 5, 12 & 39. When Appellant fell, the retractable leash attached to Blue released five or six feet of slack, allowing Blue to rush forward into the elevator and bite down upon Tabby's skull. *See id.* at 7-8, 17-18, 40 & 42.

Appellant pulled heavily on the leash, regaining control of Blue, which exited the elevator and sat beside him. *See* N.T. at 7-8 & 43. Tabby was gravely injured from a puncture wound in her skull. *See id.* at 8-9. Upon inspection, Appellant found the puncture wound on top of Tabby's head and feared she had died, noting that her tongue was sticking out and she was not breathing. *See id.* at 43-44. Appellant took Tabby and Ms. Siegel to a veterinarian's office, where the staff confirmed that Tabby had passed away. *See id.* at 8-9 & 44-45. Appellant took full

---

[3] Tabby's full name was "Tabatha Bobbie." *See* Notes of Testimony, April 14, 2021 (N.T.), at 4.

[4] Plymouth Hill Condominium protocols require that, to walk their dogs, resident dog owners must use the service elevator to descend to the terrace floor of the building where there is a driveway to the dog walk area of the property. *See* N.T. at 4 & 13.

[5] At the time, Appellant was recovering from a knee replacement undergone a month prior. *See* N.T. at 5 & 38.

responsibility for the incident and compensated Ms. Siegel civilly for Tabby's loss.[6] *See id.* at 14.

Ms. Siegel reported the incident to the Plymouth Meeting Police later that day. *See* N.T. at 46. The following day, an officer visited the Plymouth Hill Condominium to investigate and spoke with Appellant and Ms. Siegel, both of whom recounted the events described above in similar fashion. *See id.* at 24-25. The police ultimately issued a summary citation to Appellant for harboring a dangerous dog. *See id.* at 25-26. After a Magisterial District Judge found Appellant guilty of harboring a dangerous dog, Appellant appealed to the trial court. *See* Trial Court Opinion dated July 1, 2021 (Trial Court Opinion) at 2 (pagination supplied). The trial court found Appellant guilty and ordered Appellant to pay a $500 fine.[7] *See id.* Appellant timely appealed.[8]

On appeal,[9] Appellant claims the evidence was insufficient to find him guilty of harboring a dangerous dog. *See* Appellant's Br. at 3 & 13-23. Specifically, Appellant argues the Commonwealth failed to prove that Blue had a history of attacks or a propensity to attack without provocation. *See id.* at 13-15. Appellant

---

[6] Ms. Siegel had no outstanding veterinarian bills from this incident. *See* N.T. at 11 & 50. Appellant's insurance otherwise compensated Ms. Siegel for the loss of her dog. *See id.* at 50.

[7] The trial court also directed that Blue be made to comply with all requirements for animals that have been deemed dangerous. *See* Trial Court Opinion dated July 1, 2021 (Trial Court Opinion) at 2 (pagination supplied).

[8] Appellant originally appealed to the Superior Court of Pennsylvania, which transferred the matter to this Court. *See* Superior Court Transfer Order in Docket No. 1035 EDA 2021, filed June 29, 2021.

[9] In reviewing a harboring a dangerous dog conviction, this Court is limited to determining whether the trial court's findings were supported by competent evidence, whether errors of law were committed, or whether the trial court's determinations demonstrated a manifest abuse of discretion. *See Com. v. Comella*, 735 A.2d 738, 739 n.2 (Pa. Cmwlth. 1999).

also alleges that the Commonwealth failed to prove that Blue was not provoked by Tabby's barking. *See id.* at 15-23. Appellant is not entitled to relief.

Section 502-A of the Dog Law provides, in pertinent part, as follows:

> **(a) Summary offense of harboring a dangerous dog.--** Any person who has been attacked by one or more dogs, or anyone on behalf of the person, a person whose domestic animal, dog or cat has been killed or injured without provocation, the State dog warden or the local police officer may file a complaint before a magisterial district judge, charging the owner or keeper of the a [sic] dog with harboring a dangerous dog. The owner or keeper of the dog shall be guilty of the summary offense of harboring a dangerous dog if the magisterial district judge finds beyond a reasonable doubt that the following elements of the offense have been proven:
>
> > (1) The dog has done any of the following:
> >
> > > (i) Inflicted severe injury on a human being without provocation on public or private property.
> > >
> > > (ii) Killed or inflicted severe injury on a domestic animal, dog or cat without provocation while off the owner's property.
> > >
> > > (iii) Attacked a human being without provocation.
> > >
> > > (iv) Been used in the commission of a crime.
> >
> > (2) The dog has either or both of the following:
> >
> > > (i) A history of attacking human beings and/or domestic animals, dogs or cats without provocation.

4

(ii) A propensity to attack human beings and/or domestic animals, dogs or cats without provocation. *A propensity to attack may be proven by a single incident of the conduct described in paragraph (1)(i), (ii), (iii) or (iv).*

(3) The defendant is the owner or keeper of the dog.

3 P.S. § 459-502-A(a) (emphasis added). Thus, a conviction for the offense of harboring a dangerous dog requires proof of three elements: (1) the individual is the owner or keeper of the dog; (2) the dog has committed one of four enumerated acts, one of which is killing or inflicting severe injury on a domestic animal, dog or cat without provocation while off the owner's property; and (3) the dog has either or both a history of attacking human beings and/or domestic animals without being provoked and/or a propensity to attack human beings and/or domestic animals without provocation, which may be proven by a single incident. *See id.*; *see also Com. v. Seyler*, 929 A.2d 262, 266 (Pa. Cmwlth. 2007).

Here, Appellant readily concedes that he is the owner of Blue, which is the dog in question. Additionally, no dispute exists regarding the fact that Blue's bite killed Tabby and that the killing occurred when the dogs were in a common area of the Plymouth Hill Condominium, *i.e.*, not on Appellant's property. Further, no evidence exists in this matter that Blue had a history of attacking either humans or domestic animals. Thus, the only question before the trial court was that of Blue's propensity to attack domestic animals without provocation.

We acknowledge that previous versions of the Dog Law required multiple incidents before a dog owner could be found guilty of harboring a dangerous dog, effectively affording dogs one free bite. *See Eritano v. Com.*, 690

5

A.2d 705 (Pa. 1997). However, in 1996 the legislature amended the Dog Law, effectively doing away with the "one free bite" rule. As this Court explained:

> The 1996 amendments [of the Dog Law] clearly address the legislature's response to holdings[] which required multiple incidents before liability could have been imposed. The 1996 amendments added specific words such as "single incident" to ensure that where it is clear from one attack that a dog is dangerous, that the "owners or keepers" are criminally liable for the summary offense of harboring a dangerous dog. The 1996 amendments effectively removed the previous "one free bite" interpretation and the [s]tatute now permits liability for the dog's first bite.

*Com. v. Hake*, 738 A.2d 46, 49-50 (Pa. Cmwlth. 1999) (emphasis omitted). While noting that "the 1996 amendments unmistakably impose strict liability for violation [of the Dog Law's provision against harboring a dangerous dog,]" this Court has expressly noted that "[t]he legislature is clearly permitted to make such a change." *Hake*, 738 A.2d at 49. This Court has repeatedly confirmed that a single incident of the conduct described in Section 502-A(a)(1)(i-iv) of the Dog Law suffices to prove a dog's propensity to attack for purposes of the summary offense of harboring a dangerous dog. *See* Section 502-A(a)(2) of the Dog Law, 3 P.S. § 459-502-A(a)(2); *see also Seyler*, 929 A.2d at 266; *Com. v. Baldwin*, 767 A.2d 644, 646-47 (Pa. Cmwlth. 2001); *Hake*; 738 A.2d at 50.

Here, the trial court found that Tabby's barking on the morning of January 12, 2020 did not provoke Blue to attack. *See* Trial Court Opinion at 4. The trial court noted that Appellant himself testified that Blue and Tabby frequently barked at one another without incident, and that, while the owners would always take up the slack in their respective leashes to avoid a confrontation, neither animal

6

ever tried to pull off the leash and attack the other. *See id.* Appellant instead regarded the barking merely as normal activity between the dogs, a contest to determine which could bark louder. *See id.* Based on this record, the trial court found Appellant's argument that Tabby's barking provoked Blue lacked merit. *See id.* at 4-5. Thus, after noting that Section 502-A of the Dog Law expressly states that a single incident of the killing of a domestic dog without provocation while off the owner's property can constitute a dog's propensity to attack without provocation, *see* 3 P.S. § 459-502-A(a)(2)(ii), the trial court found that the bite that killed Tabby was "sufficient to serve as the 'single incident' which establishes [in Blue] a propensity to attack domestic animals without provocation." Trial Court Opinion at 4; *see also* N.T. at 62-63. Based on the record before us, we find no error in the trial court's conclusion. The single unprovoked attack, as described, severe enough to puncture Tabby's head and result in her death, was, in fact, sufficient to establish the requisite propensity. *See Baldwin*, *Hake*, *Seyler*.

Further, Appellant's assertion that Blue's action was provoked by Appellant's fall merits no relief. *See* Appellant's Br. at 18-19. Appellant argues in his brief that

> [t]he situation *from Blue's perspective* [pertaining to Tabby's barking] was exacerbated by the fact that [A]ppellant fell, which further triggered and provoked Blue to react in the manner he did. Blue instinctively *may have concluded* that [A]ppellant's fall was caused by the other dog and that the other dog was a threat to [A]ppellant.

Appellant's Br. at 18 (emphasis provided). In addition to being a completely speculative presentation of facts in the light most favorable to Appellant, this argument ignores the evidence of record that the dogs were barking prior to

Appellant falling and that, when the leash slackened, Blue immediately ran and attacked Tabby, killing her. The trial court heard all the evidence and "determined that the trial evidence established all elements of the harboring a dangerous dog statute beyond a reasonable doubt." Trial Court Opinion at 5. We find no error in this determination.

Finally, we are unpersuaded by Appellant's argument that a dog's propensity to attack without provocation cannot be proven by a single attack where the victim is a dog as opposed to a human. *See* Appellant's Br. at 15. The Dog Law states otherwise. Very simply, the text of Section 502-A(a)(2) provides that a dog can be deemed dangerous based on a propensity to attack humans and/or domestic animals, including dogs or cats, which propensity can be illustrated by a single incident. *See* 3 P.S. § 459-502-A(a)(2)(ii). Otherwise stated, a dog may be deemed dangerous for the purposes of the summary offense of harboring a dangerous dog where it is illustrated that a dog has a propensity to attack humans, which can be proven by a single attack on a human, or where it is illustrated that the dog has a propensity to attack domestic animals including dogs and cats, which propensity can also be proven by a single attack against a domestic animal. *See id.* The cases cited by Appellant illustrate this proposition in cases of attack on humans. *See* Appellant Br. at 15 (citing *Baldwin*, 767 A.2d at 646 and *Hake*, 738 A.2d at 47). The cases do not concern attacks on domestic animals; however, by discussing and affirming the veracity of the proposition in terms of human attacks, these cases do not preclude the application of the proposition to domestic animals specified by the statute, including dogs.

For the reasons above, we find that substantial evidence supports the trial court's conviction of Appellant for the offense of harboring a dangerous dog.

Further, we find no error of law or manifest abuse of discretion in the trial court's determination. Therefore, we affirm the judgment of sentence entered by the trial court.

_____
CHRISTINE FIZZANO CANNON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania     :
     :
        v.     :
     :
Gavin Pennock,     :   No. 863 C.D. 2021
        Appellant     :

## O R D E R

AND NOW, this 28th day of October, 2022, the judgment of sentence entered in the Court of Common Pleas of Montgomery County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge