IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania    :
    :
    v.    :
    :  No.  180 C.D. 2022
Stephanie Fields,    :
        Appellant    :
    :  Submitted: July 1, 2022


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ELLEN CEISLER, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                 FILED: October 6, 2023

Stephanie Fields (Appellant) appeals from an order of the Court of Common Pleas of Butler County (trial court) finding her guilty of two summary counts of harboring a dangerous dog under Section 502-A(a)(1)(iii), 3 P.S. § 459-502-A(a)(1)(iii), of the Dog Law.[1]  Appellant contends that the trial court erred in determining that her two dogs "pursued" Barbara Lamendola (Victim) and, accordingly, that the Commonwealth met its burden of proof.  Upon careful review, we reverse.

## I.    FACTUAL AND PROCEDURAL HISTORY

This case stems from an incident that occurred on June 29, 2021. (Reproduced Record (R.R.) at 011a.)  The testimony presented in the trial court can be

---

[1] Act of December 7, 1982, P.L. 784, *as amended*, 3 P.S. §§ 459-101 - 459-1206.  Section 502-A(a)(1)(iii) was added by the Act of May 31, 1990, P.L. 213, 3 P.S. § 459-502-A(a)(1)(iii).

summarized as follows. During the incident, Victim was on her property with her dog, Colby. Appellant's two dogs, Lucy and Charlie, approached from behind, passed Victim on both sides, and "came right onto [Colby]." (R.R. at 012a.) Victim stated that Appellant's dogs put their mouths on Colby and pushed him down. Colby freed himself of his harness, which prompted Lucy and Charlie to attempt to get back on top of him again. (R.R. at 012a-013a.) Victim testified that she was between two to three feet away from Colby during the incident. (R.R. at 022a-23a.) A construction worker working at Victim's residence intervened by taking Lucy by the collar, which allowed Victim to pick up Colby. (R.R. at 013a.) After Victim picked up Colby, Charlie approached but stopped and retreated when Victim repeatedly yelled "no." (R.R. at 013a, 023a.) Victim and Colby retreated into the house, where Victim promptly called the police. (R.R. at 012a-013a, 023a.)

Victim inspected Colby for any injuries and found no blood or puncture wounds. (R.R. at 014a.) She noticed a limp in Colby's walk and scheduled a veterinarian appointment for the next day. Victim later canceled the appointment because the limp went away by that evening. (R.R. at 014a-015a.) Victim stated that neither of Appellant's dogs bit Victim nor jumped up on her but "went right for [Colby.]" (R.R. at 018a.) Victim also stated that Colby survived the incident and did not suffer any severe injuries, broken bones, disfiguring lacerations, or wounds requiring stiches or surgery. (R.R. at 018a.)

Appellant was charged with two summary citations, one for each dog, under Section 502-A(a)[2] of the Dog Law for harboring dangerous dogs. (R.R. at 006a.)

---

[2] A conviction for the offense of harboring a dangerous dog requires proof of three elements: (1) the individual is the owner or keeper of the dog; (2) the dog has committed one of four enumerated acts, one of which is attacking a human being without provocation; and (3) the dog has either or both a history of attacking human beings and/or domestic animals without being provoked and/or a **(Footnote continued on next page…)**

2

On September 2, 2021, a magisterial district judge (MDJ) found Appellant guilty of both citations. On December 8, 2021, the trial court affirmed the MDJ's guilty verdict, finding that the Commonwealth established that Appellant's dogs "attacked" Victim. (R.R. at 002a, 038a.) The trial court fined Appellant $100.00 for each count plus court costs.

Appellant appealed on January 7, 2022.[3] (R.R. at 001a.) On January 20, 2022, the trial court ordered Appellant to file a Concise Statement of Errors Complained of on Appeal (Concise Statement) pursuant to Pennsylvania Rule of Appellate Procedure (Pa.R.A.P.) 1925(b). Appellant timely filed her Concise Statement on February 10, 2022. On March 4, 2022, the trial court issued its opinion pursuant to Pa.R.A.P. 1925(a). (Trial Court 1925(a) Opinion.)[4]

## II. ISSUES

On appeal, Appellant raises two issues, which can fairly be combined into one issue. Appellant argues that the trial court erred in finding Appellant guilty of violating Section 502-A(a) because the Commonwealth did not carry its burden of proof to establish that Appellant's dogs "pursued" Victim.

---

propensity to attack human beings and/or domestic animals without provocation, which may be proven by a single incident. *See* 3 P.S. § 459-502-A(a).

[3] Appellant initially appealed to the Superior Court, which transferred the case to this Court. (R.R. at 001a.)

[4] Because the trial court judge who found Appellant guilty retired, another trial court judge wrote the Pa.R.A.P. 1925(a) opinion, wherein he essentially stated that because he did not preside over the summary appeal trial or render the findings/final decision, he deferred to this Court to determine "whether the Commonwealth has met its burden of establishing the violations of the [Dog Law] beyond a reasonable doubt." (Trial Court Pa.R.A.P. 1925(a) Opinion at 3.) However, our review of the trial court's finding of guilt following a *de novo* summary trial is limited to whether the trial court's findings are supported by substantial evidence, the trial court erred as a matter of law, or the trial court abused its discretion. *Commonwealth v. Hake*, 738 A.2d 46, 47 n.4 (Pa. Cmwlth. 1999).

## III. DISCUSSION

Appellant argues that the Commonwealth failed to establish one of the required elements of the offense, specifically Section 502-A(a)(1)(iii). Section 502-A of the Dog Law requires the Commonwealth prove, beyond a reasonable doubt, the following three elements:

> (1) The dog has done any of the following:
>     (i) Inflicted severe injury on a human being without provocation on public or private property.
>     (ii) Killed or inflicted severe injury on a domestic animal, dog or cat without provocation while off the owner's property.
>     **(iii) Attacked a human being without provocation.**
>     (iv) Been used in the commission of a crime.
> (2) The dog has either or both of the following:
>     (i) A history of attacking human beings and/or domestic animals, dogs or cats without provocation.
>     (ii) A propensity to attack human beings and/or domestic animals, dogs or cats without provocation. A propensity to attack may be proven by a single incident of the conduct described in paragraph (1)(i), (ii), (iii), or (iv).
> (3) The defendant is the owner or keeper of the dog.

3 P.S. § 459-502-A (emphasis added). In considering the plain language of the Dog Law, we look to its defined terms. "Attack" is defined as "[t]he deliberate action of a dog, whether or not in response to a command by its owner, to bite, to seize with its teeth or to pursue any human, domestic animal, dog or cat." 3 P.S. § 459-102.

Here, the charges averred that Appellant's dogs pursued and attacked **the Victim**. Appellant argues that the trial court erred in concluding that her dogs attacked Victim without provocation by "pursuing" Victim, and, thus, the Commonwealth did not establish this necessary element for a conviction.

4

"The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa. C.S. § 1921(a). In construing the language of a statute, we must construe words and phrases according to the rules of grammar and according to their common and approved usage. 1 Pa. C.S. § 1903(a). When the words of a statute are clear and free from ambiguity, its letter is not to be disregarded under the pretext of pursuing its spirit. 1 Pa. C.S. § 1921(b). It is well settled that "[o]ne way to ascertain the plain meaning and ordinary usage of terms is by reference to a dictionary definition." *In re Beyer*, 115 A.3d 835, 839 (Pa. 2015) (citing *Commonwealth v. Hart*, 28 A.3d 898, 909 (Pa. 2011) (explaining that "common and approve usage [of a term undefined by the legislature] may be ascertained by examining its dictionary definition")). *Pursue*, Black's Law Dictionary defines "pursue" as such: "To follow persistently in order to seize or obtain; to chase or hunt." Black's Law Dictionary (11th ed. 2019).

In *Commonwealth v. Hake*, 738 A.2d 46, 49-50 (Pa. Cmwlth. 1999), the dog owner was charged and convicted with harboring a dangerous dog. The incident was described as follows:

> On January 13, 1998, seven-year[-]old Katie Blankenstein (Child) was returning home from school at 4:00 p.m. when a male Pit Bull Terrier (Dog) ran out of a house and bit the Child on the leg. Norma Hendricks ([v]ictim), an adult passerby taking her daily walk, observed the commotion and crossed the street toward the scene. Realizing that she was not physically capable of managing the Dog, she turned away and ran back across the street to get help for the Child. **The Dog pursued the [v]ictim across the street**, seizing her leg, and causing her to fall on the ground.

*Id.* at 46 (emphasis added). On appeal, we considered whether propensity to attack may be proven by a single incident. We concluded that the single incident of the conduct sufficed to prove a dog's propensity to attack. *Id.* at 50. In stating the facts

5

and conducting its analysis, this Court implicitly recognized that where a dog changed its focus from one victim to another, deliberately followed the second victim, and had the intent and purpose of seizing the targeted second victim, the dog had "pursued" her. *Id.* at 49.

Similarly, in *Commonwealth v. Little* (Pa. Cmwlth., No. 1723 C.D. 2012, filed March 27, 2013), slip op. at 3-4, this Court used "pursue" to characterize the dogs' conduct when recounting the testimony of the victim's mother:

> According to Ms. Brown's testimony, she heard her son yell for help[,] and she ran to aid hi[m]. When she first approached the scene, she observed the dog[] biting at his face. Ms. Brown attempted to pick up her son, and the dog[] **continued to pursue Ms. Brown and the victim**. The two fell to the ground, and Ms. Brown covered the victim with her own body and was bitten by one or both of the dogs. The victim ran into the house.

*Id.*, slip op. at 5 (emphasis added). In *Little*, this Court noted that the dogs deliberately followed the child up the stairs to the gate and continued to do so after Ms. Brown's intervention. Additionally, the trial court engaged in some degree of examination of the dogs' state of mind when it noted that when the child victim "raised his arms up and [] was getting nervous . . . the dogs sensed his discomfort and fear at that point and that's when they attacked him." *Id.*, slip op. at 5. This Court again implicitly recognized that a reasonable person would observe that the dogs acted with intent by targeting the victims and with a purpose. Thus, as we have interpreted the term "pursue," it requires that the dog make both a conscious decision via its "deliberate action . . . to pursue" and have an identifiable target. 3 P.S. § 459-102.

Here, the trial court relied upon Victim's testimony in determining that Appellant's dogs "attacked" **her**. The trial court explained its findings as follows:

6

> Based upon what has been presented, I find that the third element of attack on a human being without provocation on – with [Victim] as the victim[--] has been sufficiently established by the Commonwealth. The fact that it took place on her property. The fact that she took appropriate action. The fact that the worker who was there and took appropriate action prevented what[,] in my mind[,] would most likely have ended up in either a severe injury to her or her dog[,] is not a defense to the statute. So[,] I'll find the [Appellant] [g]uilty of both counts, and the fines and costs imposed by the [MDJ] will be reaffirmed.

(R.R. at 034a, 038a.)  The trial court clarified that the Commonwealth established only the third enumerated act of Section 502-A(a)(1), namely that the dogs "attacked" Victim without provocation.  The trial court stated its reasoning as follows:

> And let me be very specific, [Appellant], in case you intend to file an appeal.  The specific reasons for my finding is that I find from the evidence presented that element three of attack on a human being without provocation has been established, and that the other three initial elements of infliction of severe injury, killed or inflicted severe injury on a domestic animal, and has been used in the commission of a crime[,] have not been established.

(R.R. at 038a.)   The trial court concluded that Appellant's dogs "attacked" Victim because they "pursued" her via a delineated action of "attack."  However, given our construction of "pursue," we disagree with the trial court's conclusion that there is sufficient evidence in the record establishing that Charlie and Lucy "attacked" Victim.  As Victim testified, Appellant's dogs entered her property to "push [Victim's dog] down." (R.R. at 012a.)  Appellant's dogs ran past Victim and did not acknowledge her until she picked up Colby. *Id.*  While Victim was picking up Colby, she yelled "no" at the dogs.  Victim thereafter was able to retreat to her home, ending the incident.  (R.R. at 015a, 011a-017a.)  There is no additional objective evidence in the record that

Appellant's dogs made a deliberate action to pursue Victim or that Appellant's dogs came after Victim or "attacked" Victim.

Therefore, we conclude that the trial court erred in determining that Appellant's dogs "attacked" Victim pursuant to Section 502-A(a)(1)(iii).

## IV.   CONCLUSION

Because the trial court specifically concluded that the Commonwealth did not establish any of the other enumerated acts under Section 502-A(a)(1)(iii) of the Dog Law, the Commonwealth did not carry its burden of proof to establish the summary offense.  Accordingly, we reverse the trial court's order.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | |
| | : | |
| v. | : | No. 180 C.D. 2022 |
| | : | |
| Stephanie Fields, | : | |
| Appellant | : | |

## ***ORDER***

AND NOW, this 6th day of October, 2023, the December 8, 2021 order by the Court of Common Pleas of Butler County is hereby REVERSED.

_____
PATRICIA A. McCULLOUGH, Judge