**COMMONWEALTH of Pennsylvania**

v.

**Donna Lee BALDWIN, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 22, 2000.
Decided Jan. 24, 2001.

Marta S. Laynas, West Chester, for appellant.

Thomas Ost–Prisco, West Chester, for appellee.

Before PELLEGRINI, Judge, FLAHERTY, Judge, JIULIANTE, Senior Judge.

PELLEGRINI, Judge.

Donna Lee Baldwin (Dog Owner) appeals from an order of the Court of Common Pleas of Chester County (trial court) following a trial de novo finding her guilty of violating Section 502–A of the Commonwealth's Dog Law [1] (Dog Law) for harboring a dangerous dog and imposing a fine of $100.00 plus costs.

On May 21, 1999, at approximately 8:15 p.m., Glenna Molster (Molster), Dog Owner's neighbor, while walking home from a party, stopped to speak to a neighbor and observed Dog Owner's dog (Dog), a 105–pound mixed breed Labrador, in the middle of the street near Dog Owner's property and another dog on the side of the street. After her conversation, Molster continued to walk down the middle of the street towards her residence when Dog began to approach her, growling and snarling with his head down, his ears drawn back and the hair on the back of his neck standing on end. Molster proceeded to back away from Dog and he began to move faster towards her, eventually breaking into a trot. Molster then put her hands in front of her face for protection at which time Dog came up on his hind legs and lunged towards her, his front left paw going into her right upper arm and his mouth clamping down on the middle finger of her left hand. The force of this lunge caused Molster to fall back and land on her right hip and hit her right elbow and right palm on the pavement. Dog subsequently released Molster and trotted back towards Dog Owner's residence.

As a result of the attack, Molster suffered a laceration to the upper portion of her left middle finger that extended from the tip of her finger to her second knuckle. The bottom portion of this finger was not punctured. Molster subsequently underwent four weeks of physical therapy for this injury and sustained additional injuries, including a bruised hip and elbow, a nerve impingement on her right elbow and a cut on her palm from her fall.

Dog Owner was charged with violating Section 502–A [2] of the Dog Law, and following a hearing before a District Justice, was found guilty and ordered to pay a fine of $100.00 plus costs. Dog Owner appealed to the trial court which, following

1. Act of December 7, 1982, P.L. 784, *as amended*, 3 P.S. §§ 459–101–1205. Dog Owner was charged pursuant to 3 P.S. § 459–502–A, which is one section of a group of statutes at 3 P.S. § 459–501–A through § 459–507–A, commonly referred to as the Dangerous Dog Statute.

2. 3 P.S. § 459–502–A provides in pertinent part:

The owner or keeper of the dog shall be guilty of the summary offense of harboring a dangerous dog if the district justice finds beyond a reasonable doubt that the following elements of the offense have been proven:

(1) The dog has done one or more of the following:

(i) Inflicted severe injury on a human being without provocation on public or private property.

(ii) Killed or inflicted severe injury on a domestic animal without provocation while off the owner's property.

(iii) Attacked a human being without provocation.

(iv) Been used in the commission of a crime.

(2) The dog has either or both of the following:

(i) A history of attacking human beings and/or domestic animals without provocation.

(ii) A propensity to attack human beings and/or domestic animals without provocation. A propensity to attack may be proven by a single incident of the conduct described in paragraph (1)(i), (ii), (iii) or (iv).

(3) The defendant is the owner or keeper of the dog.

a de novo hearing, found her guilty of violating Section 502–A of the Dog Law, because Dog had a propensity to attack human beings without provocation as evidenced by the attack on Molster when she was simply walking home and did not excite or provoke him and tried to retreat from his advances.[3] This appeal followed.[4]

■ Section 502–A of the Dog Law sets forth three elements that must be proven in order to establish that an owner or keeper is guilty of the offense of harboring a dangerous dog. First, it must be established that the defendant is the owner or keeper of the dog, and second, that the dog has committed one of four enumerated acts, one of which is attacking a human being without provocation. There is no dispute that both of these elements have been established. The other element that needs to be proven is that the dog has either or both a history of attacking human beings and/or domestic animals without being provoked and/or a propensity to attack human beings without provocation, which may be proven by a single incident. It is this element that Dog Owner contends has not been met.

While not denying that a propensity to attack may be proven by a single incident of conduct, Dog Owner contends that it was not the intent of the General Assembly to label a dog as dangerous for any single incident regardless of the character and nature of the dog's actions and resulting injuries. She argues that Dog's single action of pushing down Molster and not biting down on her finger as evidenced by

a lack of puncture wounds on the bottom portion of her finger does not reach the level of severity or deliberateness needed to show a propensity to attack from a single incident.

■ Contrary to Dog Owner's contention, nothing in Section 502–A of the Dog Law requires that the injury from the single incident be severe, but only that a single incident shows a propensity of the dog to attack human beings as deduced from the nature of the attack. As we stated in *Commonwealth v. Hake*, 738 A.2d 46, 49–50 (Pa.Cmwlth.1999):

> Most importantly, the 1996 amendments specifically provide that the propensity to attack may be proven by a single incident of the infliction of severe injury or attack on a human being, clearly permitting a finding of a "propensity" to attack human beings by virtue of the attack in question, even if it is only the first attack. While this interpretation may impose absolute criminal liability for any unprovoked attack by the owner or keeper's dog, such an interpretation is not without basis in predecessor dog statutes . . .
>
> The 1996 amendments [present 502–A of the Dog Law] clearly address the legislature's response to holdings, such as *Eritano*,[5] which required multiple incidents before liability could have been imposed. The 1996 amendments added specific words such as "single incident" to ensure that where it is clear from one attack that a dog is dangerous, that the "owners or keepers" are criminally liable

3. Dog Owner was also found guilty of failing to keep Dog confined to her property in violation of Section 305 of the Dog Law; however, Dog Owner is not appealing the trial court's verdict for this violation.

4. This Court's scope of review of a statutory appeal where the matter has been heard by the trial court de novo is whether the trial court's findings were supported by substantial, competent evidence, whether errors of law were committed, or whether the trial court's determinations demonstrated a manifest abuse of discretion. *Commonwealth v.*

*Figley*, 663 A.2d 873 (Pa.Cmwlth.1995), *affirmed on appeal, Eritano v. Commonwealth, ex rel. Figley*, 547 Pa. 372, 690 A.2d 705 (1997).

5. In *Eritano v. Commonwealth*, 547 Pa. 372, 690 A.2d 705 (1997), our Supreme Court held that a single incident alone could not establish a dog's propensity to attack a human being. As a result, Section 502–A of the Dog Law was amended in 1996 to provide that a single incident is sufficient to establish a propensity to attack.

for the summary offense of harboring a dangerous dog.

In this case, there was more than sufficient evidence to support the trial court's finding that this single incident evidenced the propensity of Dog to attack humans because it attacked and bit Molster without provocation. Because there is substantial evidence and no abuse of discretion, the decision of the trial court is affirmed.

## *ORDER*

AND NOW, this 24th day of January, 2001, the order of the Court of Common Pleas of Chester County dated May 10, 2000, is affirmed.