[881 NYS2d 776]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LAURIE JORNOV, Appellant. PHILIP MUELLER, Respondent.

Fourth Department, July 2, 2009

APPEARANCES OF COUNSEL

*David Bernheim*, Croton on Hudson, for appellant.
*Philip Mueller*, Schenectady, respondent pro se.

**OPINION OF THE COURT**

CENTRA, J.

### I

Defendant appeals from an order affirming the judgment (improperly denominated decision) of City Court directing the euthanization of her two dogs. We are constrained to agree with defendant that County Court erred in affirming the judgment, and we therefore conclude that the order should be modified by vacating that directive, and the matter should be remitted to City Court for further proceedings pursuant to Agriculture and Markets Law § 121 (2).

### II

On February 17, 2008, Philip Mueller was walking his German shepherd dog, Maggie, when two pit bull-terrier mixed breed dogs owned by defendant attacked Maggie and injured Mueller as well. According to the testimony of Mueller at the subsequent hearing before City Court, the two dogs, who were neither leashed nor under the control of any person, ran toward them and proceeded to attack Maggie in tandem. One of the dogs would bite Maggie, latching onto her hindquarters, and when Mueller was able to free Maggie from that dog, the other dog would circle around and latch onto her. During the struggle, Mueller's leg was bitten, and Mueller also lost his footing on the icy ground and fell. He eventually managed to enter his vehicle

with Maggie, and it was only then that the dogs stopped the attack and wandered away. Mueller reported the incident to the police, and they prepared a dangerous dog complaint concerning defendant's dogs.

At the hearing before City Court, the People presented evidence of a prior incident on June 19, 2007 during which one of defendant's dogs, which was on a leash, barked and lunged at a person leaving his place of employment. The following day, defendant's dogs mauled a kitten to death in a parking lot while defendant and her grandson were taking the dogs for a walk. The People also presented testimony that, on September 16, 2006, one of defendant's dogs ran from defendant's yard and attacked a neighbor's dog, as well as evidence that, just a few weeks before the incident with Mueller, defendant's dogs were seen running loose around the area where Mueller was attacked. Although those prior incidents were reported to the police, the first dangerous dog proceeding against defendant under Agriculture and Markets Law § 121 was not commenced until after the incident involving Mueller.

At the conclusion of the hearing, City Court determined that defendant's dogs were dangerous dogs and directed that they be euthanized. County Court affirmed the judgment of City Court, and we now conclude that the order on appeal should be modified.

III

Effective December 15, 2004, Agriculture and Markets Law § 121 and related statutes were extensively amended. First, the definition of a " '[d]angerous dog' " was expanded to include:

> "any dog which (i) without justification attacks a person, companion animal as defined in [section 350 (5)] of this chapter, farm animal as defined in [section 350 (4)] of this chapter or domestic animal as defined in subdivision seven of this section and causes physical injury or death, or (ii) behaves in a manner which a reasonable person would believe poses a serious and unjustified imminent threat of serious physical injury or death to one or more persons, companion animals, farm animals or domestic animals or (iii) without justification attacks a service dog, guide dog or hearing dog and causes physical injury or death" (Agriculture and Markets Law § 108 [24] [a]).

Unlike the prior version of the statute, the new version allows a determination that a dog is dangerous when it attacks a "companion animal," which includes in its definition "any dog or cat" (Agriculture and Markets Law § 350 [5]). We conclude on the record before us that there is clear and convincing evidence that defendant's dogs were dangerous (*see* Agriculture and Markets Law § 121 [2]). The dogs, without justification, attacked Mueller's dog, a companion animal, as well as Mueller, causing them physical injury (*see* Agriculture and Markets Law § 108 [24] [a] [i]). The dogs also behaved in a manner that a reasonable person would believe posed a serious and imminent threat of serious physical injury or death to Mueller and his dog (*see* § 108 [24] [a] [ii]). Mueller testified that the dogs continued their attack notwithstanding the fact that he was hitting their heads with the plastic housing of his dog's leash and yelling at them. In addition, Mueller testified that the dogs attempted to climb into Mueller's vehicle to continue their attack. The dogs did not leave the area until Mueller was able to shut the door of his vehicle.

Once a judge or justice determines that a dog is dangerous by clear and convincing evidence then, pursuant to the new version of the statute,

"the judge or justice shall . . . order neutering or spaying of the dog, microchipping of the dog and one or more of the following as deemed appropriate under the circumstances and as deemed necessary for the protection of the public:

"(a) evaluation of the dog by a certified applied behaviorist, a board certified veterinary behaviorist, or another recognized expert in the field and completion of training or other treatment as deemed appropriate by such expert. The owner of the dog shall be responsible for all costs associated with evaluations and training ordered under this section;

"(b) secure, humane confinement of the dog for a period of time and in a manner deemed appropriate by the court but in all instances in a manner designed to: (1) prevent escape of the dog, (2) protect the public from unauthorized contact with the dog, and (3) to protect the dog from the elements pursuant to section [353-b] of this chapter. Such confinement shall not include lengthy periods of tying or chaining;

"(c) restraint of the dog on a leash by an adult of at least twenty-one years of age whenever the dog is on public premises;

"(d) muzzling the dog whenever it is on public premises in a manner that will prevent it from biting any person or animal, but that shall not injure the dog or interfere with its vision or respiration; or

"(e) maintenance of a liability insurance policy in an amount determined by the court, but in no event in excess of one hundred thousand dollars for personal injury or death resulting from an attack by such dangerous dog" (Agriculture and Markets Law § 121 [2]).

The judge or justice may direct humane euthanasia or permanent confinement of the dog only if one of the following aggravating circumstances is established:

"(a) the dog, without justification, attacked a person causing serious physical injury or death; or

"(b) the dog has a known vicious propensity as evidenced by a previous unjustified attack on a person, which caused serious physical injury or death; or

"(c) the dog, without justification, caused serious physical injury or death to a companion animal, farm animal or domestic animal, and has, in the past two years, caused unjustified physical injury or death to a companion or farm animal as evidenced by a 'dangerous dog' finding pursuant to the provisions of this section" (Agriculture and Markets Law § 121 [3]).

Thus, unlike the prior version of the statute, a judge or justice may not automatically direct humane euthanasia or permanent confinement of a dangerous dog (*see* Agriculture and Markets Law former § 121 [4]). The various memoranda in support of the new legislation indicate that the new version of the statute provides judges and justices with greater leeway in determining the proper remedy beyond the previously mandated remedy of humane euthanasia or permanent confinement (*see* NY Assembly Mem in Support, Bill Jacket, L 2004, ch 392, at 3, 2004 McKinney's Session Laws of NY, at 1893-1894). While we agree that the new version of the statute provides a court with options other than humane euthanasia and permanent confinement upon determining that a dog is dangerous, in our view the

new version actually diminishes the discretion of a court in directing humane euthanasia or permanent confinement, even when it is patently clear that either would be appropriate.

## IV

An examination of the statute reveals that none of the aggravating circumstances is present here in order to direct the euthanization of the dogs. The first aggravating circumstance is that the dog unjustifiably attacked a person, causing "serious physical injury or death" (Agriculture and Markets Law § 121 [3] [a]). Serious physical injury is defined in Agriculture and Markets Law § 108 (29) as "physical injury which creates a substantial risk of death, or which causes death or serious or protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ," and we note that the definition of serious physical injury in Penal Law § 10.00 (10) is essentially the same. Based on the evidence before City Court, we conclude that the injuries sustained by Mueller do not meet that threshold. Mueller testified that he sustained a bite wound to his right leg, for which he was prescribed antibiotics, and he sustained a torn hamstring, for which he was instructed to take ibuprofen and attend physical therapy for six to eight weeks. Although Mueller was still in physical therapy at the time of the hearing, the hearing was conducted just a few weeks after the incident. There was no evidence that Mueller would sustain "protracted impairment of health" as a result of the incident (Agriculture and Markets Law § 108 [29]; see People v Horton, 9 AD3d 503, 504-505 [2004], lv denied 3 NY3d 707 [2004]; People v Phillip, 279 AD2d 802, 803-804 [2001], lv denied 96 NY2d 905 [2001]).

The second aggravating circumstance is that "the dog has a known vicious propensity as evidenced by a previous unjustified attack on a person, which caused serious physical injury or death" (Agriculture and Markets Law § 121 [3] [b]). That aggravating circumstance also was not established at the hearing. Although a witness testified that one of defendant's dogs barked and lunged in his direction while defendant was walking the dog, that witness did not sustain any injury as a result of that incident, let alone a serious physical injury.

Finally, the third aggravating circumstance is that the dog unjustifiably causes "serious physical injury or death to a companion animal, farm animal or domestic animal, and has, in the past two years, caused unjustified physical injury or death

to a companion or farm animal as evidenced by a 'dangerous dog' finding pursuant to the provisions of [Agriculture and Markets Law § 121]" (Agriculture and Markets Law § 121 [3] [c]). There is no question that the injury sustained by Mueller's dog constituted a serious physical injury. The evidence established that the bite wounds to the dog came close to major veins, which likely would have caused the dog's death if they had been severed. Moreover, there was a substantial risk of death to Mueller's dog based on the potential infection of the numerous bite wounds. Nevertheless, although the evidence further established that, less than a year prior to this incident, defendant's dogs had killed a cat, there was never a dangerous dog finding in connection with that incident. Under the new version of the statute, such a finding is required under the third and last aggravating circumstance. The statute provides that, when a person witnesses an attack or threatened attack upon a person or companion animal, the person may make a complaint to a dog control officer or police officer of the appropriate municipality (see § 121 [1]). The statute further provides that the officer shall inform the complainant of his or her right to commence a dangerous dog proceeding "and, if there is reason to believe the dog is a dangerous dog, the officer shall forthwith commence such proceeding himself [or herself]" (§ 121 [1]). Here, however, the police never commenced a dangerous dog proceeding in connection with either the incident involving the kitten or any of the other prior incidents involving defendant's dogs.

Because none of the three aggravating circumstances exists here, City Court lacked the authority to direct humane euthanasia, despite its strong belief that euthanization was the appropriate remedy. In our view, the new version of the statute is flawed because it deprives courts of the discretion to determine that humane euthanasia is appropriate in the absence of an aggravating circumstance, even in the face of evidence that defendant's dogs caused serious physical injury to another dog and physical injury to a person and that the dogs had a prior history of attacking another dog, killing a cat, and threatening another person. In addition, the evidence established that defendant failed to grasp the severity of the harm caused by her dogs. She testified that her dogs thought the kitten was a toy, thereby indicating her belief that their behavior was reasonable or justified, and she further testified that the incident with Mueller and his dog was simply a dog fight. Defendant repeatedly minimized the behavior of her dogs or at-

tempted to place the blame for their behavior on others, such as blaming Mueller for keeping his dog restrained while her dogs were attacking it and for hitting her dogs while attempting to stop the attack. Defendant also noted that her housemate had taken the dogs out, unleashed, at the time of the instant attack, and she thus did not believe that her dogs should be euthanized because it was not her fault that they were not on a leash at the time of the attack. There was evidence presented at the hearing, however, that defendant's housemate had taken the dogs with him on prior occasions and had allowed them to roam free. In any event, the evidence at the hearing established that, even when defendant had the dogs restrained, she was unable to stop them from mauling the kitten. Although there clearly are aggravating circumstances here, they undeniably are not those listed in the statute. We thus would deem it advisable to amend the statute to afford a judge or justice the discretion to direct the humane euthanasia of a dangerous dog when there are aggravating circumstances deemed by the judge or justice to warrant such action.

## V

The remaining contentions of defendant do not require a further modification. The People established by clear and convincing evidence that the dogs that attacked Mueller and his dog were the dogs owned by defendant, as defendant conceded in her testimony. Defendant never objected to the receipt of various documents in evidence and never requested an adjournment to review those documents or to subpoena witnesses, and thus her contentions with respect thereto are not preserved for our review. We reject the further contention of defendant that City Court abused its discretion in refusing to assign counsel to represent her. This action is civil in nature (*see Matter of Foote*, 129 Misc 2, 4 [1927]), and defendant faced a "civil penalty" of up to $1,500 (Agriculture and Markets Law § 121 [7]). Defendant's dogs had not previously been determined to be dangerous, and defendant thus was not facing a misdemeanor charge (*see* § 121 [8]). We note that the requirement of assigned counsel in criminal actions is based on the underlying principle "that when the State or Government proceeds against the individual with risk of loss of liberty or grievous forfeiture, the right to counsel and due process of law carries with it the provision of counsel if the individual charged is unable to provide it for himself [or herself]" (*Matter of Smiley*, 36 NY2d 433, 437

[1975]). However, the general rule in civil actions is that " 'there is no absolute right to assigned counsel; whether in a particular case counsel shall be assigned lies instead in the discretion of the court' " (*Planck v County of Schenectady*, 51 AD3d 1283, 1283 [2008], quoting *Smiley*, 36 NY2d at 438). Here, the court did not abuse its discretion in denying defendant's request for assigned counsel inasmuch as defendant faced only civil penalties and no "grievous forfeiture" (*Smiley*, 36 NY2d at 437). Although "an adverse determination could form the basis for potential criminal charges . . . , such effects are contingent possibilities, too remote and speculative to require counsel at this stage" (*Matter of Miller v Gordon*, 58 AD2d 1027, 1027 [1977]). "The danger of incarceration would arise only if [defendant negligently permitted her dogs thereafter to bite or kill a person], not as a direct result of any determination in [this] proceeding[ ]" (*id.*).

We have considered defendant's remaining contentions and conclude that they are without merit.

## VI

Accordingly, we conclude that the order should be modified by vacating the directive of humane euthanasia, and the matter should be remitted to City Court for further proceedings pursuant to Agriculture and Markets Law § 121 (2) (*see generally Cuozzo v Loccisano*, 15 Misc 3d 16, 17 [2007]).

HURLBUTT, J.P., SMITH, PINE and GORSKI, JJ., concur.

It is hereby ordered that the order so appealed from is unanimously modified on the law by vacating the directive of humane euthanasia and as modified the order is affirmed, and the matter is remitted to Little Falls City Court for further proceedings pursuant to Agriculture and Markets Law § 121 (2).