Spain, J.
Appeal from an order of the County Court of Otsego County (Burns, J.), entered February 17, 2012, which, among other things, affirmed the judgment of the Town Court of the Town of Oneonta in favor of petitioner.
This appeal arises from a proceeding in which Ghost, respondent’s American pit bull terrier, was found to be a dangerous dog within the meaning of Agriculture and Markets Law § 123. In November 2011, respondent and her daughter were walking Ghost, who was collared, harnessed and leashed, down the sidewalk of Chestnut Street in the Town of Oneonta, Otsego County. Ranger, a German Shepherd owned by the daughter of Ana-Marie Blasetti, was at the time leashed to a porch railing in the front yard of Blasetti’s home at 367 Chestnut Street. As respondent and Ghost passed the Blasetti residence, Ranger left the porch, somehow escaping his leash, and ran at Ghost. The two dogs immediately began to fight, with respondent maintaining hold of Ghost’s leash and screaming for help. Blasetti did not witness the initial attack, but testified that she quickly came outside and grabbed Ranger’s collar to restrain him, but that Ghost had by then secured hold of Ranger’s throat. Finally, a neighbor came out and threw a bowl of water on the dogs. The fight continued, however, until a second dousing successfully separated the dogs. As a result of the fight, Ranger suffered puncture wounds and injuries to his throat such that the carotid artery and jugular vein were exposed. Ghost was bleeding from his paws where several of his toenails had been ripped off and he also sustained multiple lacerations to his face, muzzle and neck.
Blasetti thereafter filed a complaint against respondent and, following a hearing (see Agriculture and Markets Law § 123 [2]), the Town Court of the Town of Oneonta (Hosley, J.) found *1104 Ghost to be a dangerous dog within the meaning of Agriculture and Markets Law § 123, that respondent was 65% culpable for the incident and responsible for that percentage of the combined veterinarian bills, and ordered that Ghost be muzzled and kept on a short leash whenever on public premises (see Agriculture and Markets Law § 123 [2] [c], [d]). Respondent appealed and County Court, summarily according explicit deference to Town Court’s credibility determinations and factual findings,[1] affirmed the order but remitted the matter for resentencing, as Town Court had not “order[ed] neutering or spaying of the dog [or] microchipping of the dog” as required by Agriculture and Markets Law § 123 (2). On respondent’s appeal, we now reverse.
Even according the appropriate deference due to Town Court’s credibility determinations, we find insufficient evidence to sustain a finding that Ghost is a dangerous dog within the meaning of the Agriculture and Markets Law. A “ [d] angerous dog” is defined as a dog that “without justification attacks a person, companion animal ... or domestic animal . . . and causes physical injury or death” or “behaves in a manner which a reasonable person would believe poses a serious and unjustified imminent threat of serious physical injury or death to one or more . . . companion animals” (Agriculture and Markets Law § 108 [24] [a] [emphasis added]). Notably, a dog shall not be declared to be dangerous if its conduct “was justified because the dog was responding to pain or injury, or was protecting itself [or] its owner ... or was justified because the injured, threatened or killed companion animal . . . was attacking or threatening to attack the dog” (Agriculture and Markets Law § 123 [4] [c]). At a hearing held pursuant to Agriculture and Markets Law § 123, the petitioner bears the burden of establishing, by clear and convincing evidence, that the dog at issue is dangerous (see Agriculture and Markets Law § 123 [2]; People v Jornov, 65 AD3d 363, 366 [2009]).
Here, no dispute exists that Ranger broke free of his leash and that Ghost remained on his leash and did not at any time pull free of his owner. No testimony was presented to contradict respondent’s eyewitness account that Ranger attacked Ghost first; indeed, Town Court acknowledged as much in stating that Ranger “picked a fight he could not win.” Given the undisputed evidence adduced at the hearing, the only conclusion that may *1105 be reached is that Ghost injured Ranger in defense of himself and his owner and, thus, his actions were justified, and not of the kind to support a finding that he is a dangerous dog within the meaning of the statute (see Agriculture and Markets Law § 123 [4] [c]; People v Sheeran, 32 Misc 3d 1240[A], 2011 NY Slip Op 51651[U], *3 [Mount Vernon City Ct 2011]; compare People v Jornov, 65 AD3d at 364-366; Matter of People v Horvath, 205 AD2d 927, 928 [1994]).
It appears that the premise for Town Court’s finding that Ghost is a dangerous dog is that, although the smaller dog, he was nonetheless more effective in causing harm than his opponent. Petitioner specifically argued that Ghost is dangerous because he is a pit bull, asserting that pit bulls are “a breed that [a court] can take notice . . . has a history of being violent.” Town Court apparently concurred, inexplicably stating that “[d]ogs are by nature stupid and aggressive” and describing Ghost as an “aggressive, powerful and vicious” pit bull, while failing to identify Ranger’s breed, although German Shepherds are, like pit bulls, regularly characterized as an aggressive breed (see Roupp v Conrad, 287 AD2d 937, 938 [2001]). The condemnation of an individual dog in the context of a dangerous dog proceeding solely by virtue of its breed is without any legal basis. We have repeatedly held that “ ‘there is no persuasive authority for the proposition that a court should take judicial notice of the ferocity of any particular type or breed of domestic animal’ ” (Malpezzi v Ryan, 28 AD3d 1036, 1038 [2006], quoting Roupp v Conrad, 287 AD2d at 938; see Agriculture and Markets Law § 107 [5]). Here, absolutely no evidence was submitted that Ghost had on any prior occasion attacked another dog or person or that, on the occasion in question, he exhibited any aggressive behavior toward the people attempting to end the fight (see People v Sheeran, 2011 NY Slip Op 51651 [U], *3 [2011]). Attacked by another dog with his owner at close range, Ghost’s protective and defensive instincts were entirely understandable, even expected. Petitioner’s suggestion at the hearing that respondent should have done more to separate the dogs and Town Court’s finding that she was “never in control of’ Ghost is puzzling, given the obvious risk of stepping in the middle of two fighting dogs and the fact that respondent never released hold of Ghost’s leash.[2]
*1106 Peters, EJ., Lahtinen and Stein, JJ., concur.
Ordered that the order is reversed, on the law, without costs, and complaint by Ana-Marie Blasetti against respondent dismissed.

. It bears emphasis that when, as here, County Court sits as an intermediate appellate court, it has full power to review all questions of law, fact and exercises of judicial discretion by a town court (see UJCA 1703 [a]; CPLR 5501 [c]).

. Respondent was pregnant at the time and understandably concerned for her own safety. That night, following this upsetting incident, she miscarried her child. At the hearing before Town Court, petitioner introduced evidence that respondent could not be reached in the days following this incident, *1106 prompting respondent to attempt to explain that she was hospitalized due to the miscarriage. Town Court admonished her, warning her not to dwell on irrelevant evidence. Nevertheless, in its opinion, the court addresses the fact that respondent was pregnant, making the injudicious statement that taking this breed of dog for a walk and “being pregnant shows a lack of judgment.” Even were there sufficient evidence to sustain the dangerous dog finding, based on Town Court’s admitted general opinions about dogs and its specific opinion about respondent, we would be compelled to reverse this decision based on judicial bias.