J-S01013-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| GENENE MARIE EVANOVICH | : | |
| Appellant | : | No. 597 WDA 2025 |

Appeal from the Judgment of Sentence Entered April 28, 2025
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-SA-0001489-2024

BEFORE: BOWES, J., PANELLA, P.J.E., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.: **FILED: MAY 11, 2026**

Genene Marie Evanovich appeals *pro se* from the judgment of sentence entered following her conviction for two counts each of harboring a dangerous dog and unlawful confinement and control, for which she was ordered to pay a fine of $1,000, costs, and restitution in the amount of $4,860.80. We affirm.

We glean the following history from the certified record. On August 5, 2024, Appellant and her fiancé, Shane McNeese, were walking their two Bernadoodle dogs, Jack and Hutch, in their neighborhood in Imperial, Pennsylvania.[1] Appellant and Mr. McNeese each had one dog on a leash.

---

[*] Former Justice specially assigned to the Superior Court.

[1] While we use the spellings reflected in the notes of testimony, we acknowledge that, in her *pro se* brief, Appellant identifies her dogs as Jax and Hutch.

On the same street, Starr Isaac was walking Charlie, a smaller breed dog, in the opposite direction. Upon seeing Appellant's dogs, Ms. Isaac crossed the street and continued walking. *See* N.T. Summary Appeal Hearing, 4/28/25, at 6. Ms. Isaac did not say anything to Appellant or Mr. McNeese, and Charlie did not bark or react to the Bernadoodles. *Id*. at 8.

As Ms. Isaac continued to walk, Jack and Hutch, who had been playing with another neighborhood dog, broke free from their leashes and ran approximately three houses down and began to attack Ms. Isaac. *Id*. at 29. Ms. Isaac picked up Charlie and held him above her head. During the attack, she was bitten on her hands, fingernails, shoulder, and both arms. She also sustained a cut knee and bleeding from being knocked to the ground. Charlie sustained dog bites to his leg and foot, resulting in several broken toes. *Id*. at 10-11.

Officer Graydon Wass of the Findley Township Police Department responded to the scene and observed that Ms. Isaac had multiple lacerations and puncture wounds. *Id*. at 19. She was transported to the hospital by ambulance, incurring $4,860.80 for that service and costs associated with Charlie's veterinary care. *Id*. at 15-16.

Based on the foregoing, Appellant was charged with two counts each of harboring a dangerous dog and unlawful confinement and control. The magisterial district judge found Appellant guilty. She appealed to the court of common pleas, and a summary appeal hearing was held, in which Ms. Isaac and Officer Wass testified for the Commonwealth. Appellant's defense focused

upon challenging the dangerous dog charge by contesting the Commonwealth's claim that Jack and Hutch attacked Ms. Isaac without provocation. Mr. McNeese testified for Appellant. Ronald Zvirman, Appellant's neighbor who did not witness the incident, offered character testimony for Jack and Hutch. Additionally, Appellant called Elissa Weimer, a certified dog behaviorist and dog trainer, as an expert in dog behavior.

In addition to the above recitation, the evidence adduced at the summary appeal hearing further established the following. Appellant, Mr. McNeese, and Ms. Isaac lived in the same neighborhood and were familiar with each other. Mr. McNeese stated that Jack, Hutch, and Charlie had an amicable relationship until approximately ten months before the attack. *Id*. at 25-26. Ms. Isaac countered that the three dogs only had an amicable relationship when they were "very young," and that she had been afraid of Jack and Hutch as they grew older because "they were always going crazy." *Id*. at 51-52. She would "always go opposite ways" from Appellant while walking. *Id*. at 52. According to Mr. McNeese, during a nighttime walk with Jack and Hutch ten months before, an unleashed Charlie ran up to Jack and Hutch and caused a "dust-up." *Id*. at 25-26. No police report or claim was filed against Ms. Isaac because of this alleged incident, and no injuries to Appellant's dogs were asserted. *Id*. at 54. Ms. Isaac testified on rebuttal that she was not home that evening and did not know what occurred. However, she indicated that Charlie wore a "wired" collar to confine him to her yard. *Id*. at 52. Despite this purported interaction, Appellant and Mr. McNeese

continued to walk Jack and Hutch near Ms. Isaac's house weekly. According to Mr. McNeese, upon seeing each other, the three dogs would bark. *Id*. at 27-28.

In the summary appeal hearing, Mr. Zvirman stated that he had observed Jack and Hutch playing peacefully with a different dog on a separate occasion. *Id*. at 38. Ms. Weimer testified in her expert opinion that dogs have memory and that certain events may trigger a dog to "bring on different emotions and memories." *Id*. at 50. After interacting with Jack and Hutch in Appellant's home, she attested that she does not believe that they would have charged Charlie if the incident ten months prior did not occur. *Id*. at 50-51.

The trial court found Appellant guilty and she was sentenced as indicated hereinabove. This timely appeal followed. The court ordered Appellant to file a concise statement pursuant to Pa.R.A.P. 1925(b). Although it is not included in the certified record, the docket reflects that Appellant complied. The trial court responded with a Rule 1925(a) opinion addressing, among other things, Appellant's defense of provocation.

On appeal, Appellant's brief fails to conform to Pa.R.A.P. 2111 in that it does not separately set forth a statement of the questions involved. However, we can glean from her brief that she has narrowed her issue to challenging the sufficiency of the evidence that the Commonwealth presented to sustain the harboring a dangerous dog convictions: "In the present case, the only issue is provocation. . . . The Commonwealth failed to offer any evidence of lack of provocation." Appellant's brief at 6 (pagination supplied).

We consider Appellant's issue in light of the following legal precepts:

When reviewing a challenge to the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail. This standard applies equally where the Commonwealth's evidence is circumstantial.

*Commonwealth v. Fallon*, 275 A.3d 1099, 1105 (Pa.Super. 2022) (cleaned up).

Appellant was convicted of harboring a dangerous dog pursuant to 3 P.S. § 459-502-A(a.2)(2)(i), of the Dog Law, which provides in relevant part as follows:

(2) The owner or keeper of the dog shall be guilty of the summary offense of harboring a dangerous dog if the magisterial district judge finds beyond a reasonable doubt that the dog has done any of the following:

(i) Inflicted severe injury without provocation on a human being on public or private property.

3 P.S. § 459-502-A.

Here, Appellant only challenges whether the Commonwealth proved beyond a reasonable doubt that the Bernadoodles were not provoked. *See* Appellant's brief at 6. She argues that provocation need not occur immediately before the attack, and because Mr. McNeese testified about a prior incident where the dogs were engaged in an altercation and the expert opined about dog memory, that this was sufficient to prove provocation based

- 5 -

upon the alleged attack by Charlie ten months earlier. *Id*. Appellant also argues that the Commonwealth provided no evidence to counter the testimony of Mr. McNeese or the dog behavior expert. *Id*. at 5.

Although the Dog Law does not define the term "provocation," the Supreme Court has looked to *Websters' Ninth New Collegiate Dictionary* in defining the term. *See Eritano v. Commonwealth*, 690 A.2d 705, 709 (Pa. 1997). Specifically, "to provoke" means to "arouse to a feeling or action; to incite to anger; to call forth; to stir up purposely." *Id*. (quoting *Webster's Ninth New Collegiate Dictionary* 948 (1986)). For example, in *Eritano*, the Court held that a child attempting to eat a piece of chicken with no expression or action towards a dog did not meet the provocation standard as it "clearly" did not fall within such definition. *Id*. The Court's reasoning depended exclusively on this definition and did not add any time or immediacy requirements regarding the provoking act. *Id*.

Provocation, however, has been found in situations where a person makes a threatening gesture towards a dog in close proximity. *See Aegis Security Ins. Co. v. Pa Ins. Dep't*, 798 A.2d 330, 334 (Pa.Cmwlth. 2002).[2] In *Aegis*, the Commonwealth Court held that a person provoked a dog when the individual passed a "No Trespassing" sign, entered the yard, and waved a

---

[2] Our settled precedent permits us to cite the holdings of the Commonwealth Court where it is persuasive: "This Court is not bound by the decisions of the Commonwealth Court. However, such decisions provide persuasive authority, and we may turn to our colleagues on the Commonwealth Court for guidance when appropriate." *Petow v. Warehime*, 996 A.2d 1083, 1088 n.1 (Pa.Super. 2010) (cleaned up).

leather portfolio at the dog to move her away. *Id*. By contrast, in *Commonwealth v. Hake*, 738 A.2d 46, 46 (Pa.Cmwlth. 1999), the Commonwealth Court concluded that there was no provocation where an animal escaped from confinement and attacked a passerby on the street. Similarly, our sister court determined that provocation did not exist where a person was "simply walking home" and tried to retreat from a dog's advances. *Commonwealth v. Baldwin*, 767 A.2d 644, 646 (Pa.Cmwlth. 2001). In *Baldwin*, a woman was walking home from a party and stopped to speak to a neighbor. *Id*. at 645. When she saw an unconfined dog in the street that was growling and snarling, she began to walk away and was then attacked, the Court held, without provocation. *Id*.

The Commonwealth, through the testimony of Ms. Isaac, established that she crossed the street and was at least three houses down when Jack and Hutch suddenly escaped their leashes, ran over, and attacked her and Charlie. *See* N.T. Summary Appeal Hearing, 4/28/25, at 10. The present facts are akin to those of *Baldwin*, because Ms. Isaac was on a neighborhood walk, took affirmative steps to move away from the Bernadoodles upon seeing them, and did not exhibit threatening conduct. *See Baldwin*, 767 A.2d 646. Likewise, *Hake* mirrors the facts here in that Jack and Hutch escaped from the confinement of their leashes before attacking Ms. Isaac and Charlie while they were on the street. *See Hake*, 738 A.2d at 46. Unlike the definition established in *Eritano*, no evidence suggested that Ms. Isaac aroused the dogs to a feeling or action, incited anger, or stirred them up, as they were

happily playing with another dog when she walked by with Charlie.  ***See Eritano***, 690 A.2d 709.

In support of her position, Appellant relies on decisions from Ohio and New York.  In ***Pflaum v. Summit County Animal Control***, 92 N.E.3d 132, 136 (Ohio Ct. App. 2017), the Ohio Court of Appeals found provocation where a person happened upon dogs who were actively fighting and thereby sustained an injury in trying to separate them.  This is unlike the present case because Ms. Isaac did not intervene in an ongoing fight.  Applying an analogous justification standard, a New York court upheld a defense where a dog protected itself and its owner from an imminent and unprovoked attack by another dog that broke away from its leash.  ***People v. Shanks***, 105 A.D.3d 1103, 1104 (N.Y.App.Div. 2013).  This case is likewise inapplicable because Jack and Hutch, rather than Charlie, broke away from their leashes and initiated the attack on Ms. Isaac.

Appellant further contends that there was no evidence or testimony proffered to rebut the testimony of Mr. McNeese regarding the event of October 2023, despite Mr. McNeese being the sole witness to the event and Ms. Isaac stating that her dog is subject to a collar that confines him to her yard.  ***See*** Appellant's brief at 5.  The court, as "the trier of the fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced[,] is free to believe all, part, or none of the evidence."  ***Commonwealth v. McClendon***, 874 A.2d 1223, 1228 (Pa.Super. 2005) (cleaned up).  Further, "the trier of fact has the right to reject part or all of

the defendant's testimony even if uncontradicted." ***Commonwealth v. Whitfield***, 380 A.2d 362, 366 (Pa. 1977) (cleaned up); ***see also Commonwealth v. Holyfield***, 303 A.3d 760, 2023 WL 4557762, at *3 (Pa.Super. 2023) (non-precedential decision) ("[T]he fact-finder is not required to believe the defendant's testimony; as always, it may accept, reject, or credit testimony as it sees fit." (cleaned up)).

The trial court stated in its opinion that "I am not convinced there was an incident in October of 202[3] involving the three dogs." Trial Court Opinion, 08/21/25, at 4. As fact-finder, it was free to reject the testimony presented on the alleged incident that occurred ten months prior. ***See Whitfield***, 380 A.2d at 366. Although Appellant also assails the Commonwealth's failure to refute the testimony of expert witness Ms. Weimer on provocation, ***see*** Appellant's brief at 6, it is well established that even when the court has admitted expert opinions, the finder of fact is not obligated to accept them as true. ***See Nat'l Brokers of Am., Inc. v. Jordan***, 307 A.3d 1206, 1221 (Pa.Super. 2023) ("[T]he fact-finder is free to accept or reject the credibility of both expert and lay witnesses, and to believe all, part, or none of the evidence." (cleaned up)).

In light of this precedent, the Commonwealth need not directly disprove the testimony of Ms. Weimer and her expert opinion that dogs have long-term memories and that the prior incident could have caused the Bernadoodles to attack ten months later. The court was first free to disbelieve Mr. McNeese's testimony on the prior incident. ***See Whitfield***, 380 A.2d at 366. By

discrediting his account of the earlier attack, the court could properly reject Ms. Weimer's contentions since her opinion rested on the assumption that the prior incident had occurred. Even if the court found that the prior altercation had occurred, it nonetheless was not bound by the expert's opinion that the ten-month-old dispute provoked Appellant's dogs to attack Ms. Isaac. ***See Nat'l Brokers of Am.***, 307 A.3d at 1221.

After reviewing the evidence in the light most favorable to the Commonwealth, the evidence in the case *sub judice* was sufficient to establish that Appellant's dogs attacked Ms. Isaac without provocation. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 5/11/2026